STAND ENERGY CORPORATION, Appellee,

v.

EPLER et al., Appellants.

[Cite as *Stand Energy Corp. v. Epler,* 163 Ohio App.3d 354, 2005-Ohio-4820.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 04AP–777.

Decided Sept. 15, 2005.

Handwork & Kerscher, L.L.P., and Jeffrey M. Kerscher, for appellee.

Wiles, Boyle, Burkholder & Bringardner Co., L.P.A., Michael L. Close, and Dale D. Cook, for appellant Stephanie Epler.

KLATT, Judge.

{¶ 1} Defendant-appellant, Stephanie Epler, appeals from a Franklin County Court of Common Pleas' judgment establishing the value of her dower interest in her husband's property. For the following reasons, we reverse and remand.

{¶ 2} Harold B. Epler Jr. and Stephanie Epler were married on June 26, 1965. In September 1974, Harold and Stephanie began residing at 4685 Bayford Court, Upper Arlington, Ohio, a property that Harold alone owned.

{¶ 3} In a mortgage recorded on April 24, 1985, Harold mortgaged the Bayford Court property to Donald F. Epler as security for a $1.4 million note. In the mortgage document, Stephanie agreed to "release[ ] to Mortgagee all rights of dower" in the Bayford Court property. In 1993, the Epler family trust was substituted for Donald as mortgagee. Huntington National Bank ("Huntington") is trustee for the Epler family trust.

{¶ 4} On November 4, 2002, plaintiff-appellee, Stand Energy Corporation ("Stand Energy"), filed a complaint to foreclose on a judgment lien it had acquired on the Bayford Court property. In this complaint, Stand Energy named as defendants a number of entities who allegedly had an interest in the Bayford Court property, including Harold, Stephanie, and Donald F. Epler.

{¶ 5} Both Huntington (acting in its capacity as trustee for the Epler family trust) and Stand Energy moved for summary judgment, each asserting that it had a superior interest in the Bayford Court property. In her response to these summary judgment motions, Stephanie did not contest Stand Energy's right to

foreclosure, but rather argued that she was entitled to the value of her dower interest in the Bayford Court property from the proceeds of the sale.

{¶ 6} In its May 6, 2004 decision addressing the summary judgment motions, the trial court granted Stand Energy's motion, but only to the extent that it requested foreclosure based upon its judgment lien. The trial court rejected Stand Energy's argument that it had the superior interest and instead granted Huntington's motion, determining that Huntington's mortgage had priority over the interests of Stand Energy, Harold, and Stephanie. Finally, the trial court found that questions of fact remained regarding the order of priority between the interests of Stand Energy, Harold, and Stephanie and thus ordered the trial to proceed on that issue.

{¶ 7} On May 11, 2004, the parties entered into an agreed judgment entry that (1) ordered the foreclosure and sale of the Bayford Court property unless Harold paid the outstanding amounts due within ten days of the judgment entry and (2) set the order of priority in which the Franklin County Sheriff would distribute the funds from the sale of the property.

{¶ 8} Although the agreed judgment entry placed Stephanie's dower interest as fifth in priority, it did not specify the value of her interest. Accordingly, after briefing, the trial court issued a decision and entry on July 7, 2004, holding that Stephanie's dower interest should be calculated on the fair market value of the Bayford Court property, minus the value of Huntington's mortgage interest. Also, the trial court held that in making this calculation, the parties should use the Bowditch Contingent Dower Table. Stephanie appealed from this judgment entry.

{¶ 9} On appeal, Stephanie assigns the following errors:

The Trial Court erred in determining that Stephanie Epler's dower interest should be calculated on the fair market value of the property minus the value of Huntington's mortgage interest because Stephanie Epler's dower interest should be derived from the fair market value of her husband's property, without a reduction for liens ahead of her interest.

The Trial Court erred in determining that the Bowditch Table is the correct table to establish the value of Stephanie Epler's dower interest because the applicable statutory provisions direct the court to use the Federal Actuarial Tables when calculating dower interest in a foreclosure action.

{¶ 10} By her first assignment of error, Stephanie argues that her dower interest should be valued based upon the fair market value of the Bayford Court property without any deduction for the amount of Huntington's mortgage interest. We agree.

{¶ 11} Pursuant to R.C. 2103.02, "[a] spouse who has not relinquished or been barred from it shall be endowed of an estate for life in one third of the real property of which the consort was seized as an estate of inheritance at any time during the marriage." Such a dower interest is inchoate and contingent and vests in the surviving spouse only upon the owner-spouse's death. *Goodman v. Gerstle* (1952), 158 Ohio St. 353, 358, 49 O.O. 235, 109 N.E.2d 489. Despite the contingent, inchoate nature of a dower interest prior to the owner-spouse's death, a judicial sale of the property during the owner-spouse's lifetime does not vitiate the other spouse's dower interest. Rather, in an action involving a judicial sale, a court must determine the present value of the dower interest and award that amount to the spouse from the proceeds of the sale. R.C. 2103.041.

{¶ 12} The value of a dower interest is dependent upon the extent of the owner-spouse's interest in the property. In other words, "the dowable interest of the wife or widow must be measured by the beneficial interest of the husband in the real property of which he was seised in his own right * * *." *In re Hays* (C.A.6, 1910), 181 F. 674, 679. See, also, *Canan v. Heffey* (1927), 27 Ohio App. 430, 437, 161 N.E. 235 ("the value of her dower is * * * coextensive with the husband's seisin").

{¶ 13} In the case at bar, the extent of Harold's ownership over the Bayford Court property is complicated by the mortgage on the property. However, in Ohio, a mortgage is merely a security for a debt, and the legal and equitable title to the property remains in the mortgagor until the mortgage is foreclosed and a sale consummated, or until a mortgagee otherwise extinguishes the right of the mortgagor to redeem. *Hausman v. Dayton* (1995), 73 Ohio St.3d 671, 675–676, 653 N.E.2d 1190. Accordingly, Harold owned, or was seised of, the entire Bayford Court property during his marriage to Stephanie. Therefore, the value of Stephanie's dower interest must be determined from the entire fair market value of the property, not the fair market value minus Huntington's mortgage interest. See *Nichols v. French* (1910), 83 Ohio St. 162, 167–168, 93 N.E. 897 (when the spouse is "seised of the entire estate, [his wife] is dowable of the entire proceeds of sale as against all persons, except those as to whom she has waived her right"); *Hickey v. Conine* (1904), 6 Ohio C.C.(N.S.) 321, affirmed (1905), 71 Ohio St. 548, 74 N.E. 1137 ("the widow is dowable in the whole proceeds of the real estate subject to the rights of the vendor"); *Snyder v. Bickley* (1923), 18 Ohio App. 439 (the widower "is entitled to have his dower interest in said land computed and based upon the entire proceeds of the sale, payable out of the residue of the proceeds, after satisfying the mortgage").

{¶ 14} Stand Energy, however, argues that this conclusion is erroneous because Stephanie released her dower interest to Huntington when Harold

mortgaged the Bayford Court property. By this argument, Stand Energy seeks to use the release to shrink the value of Stephanie's dower interest, thus increasing the amount of proceeds available for it and the other judgment creditors whose interests were given a lower priority than Stephanie's. In *Mandel v. McClave* (1889), 46 Ohio St. 407, 22 N.E. 290, paragraph three of the syllabus,[1] the Supreme Court of Ohio rejected Stand Energy's argument by holding that the release of a dower interest in a mortgage does not inure to the benefit of the owner-spouse's subsequent judgment creditors. In so holding, the court reasoned that nothing in the nature of a mortgage transaction indicates that a spouse, in releasing her dower interest, "intends more than to pledge her contingent right of dower for that particular debt." Id. at 412, 22 N.E. 290. Further, the court found nothing in Ohio law to render a release given to one mortgagee an absolute release of the dower interest. Id.

{¶ 15} Notably, we do not hold that Stephanie's release of her dower interest to Huntington has no effect on the instant proceedings. The release is relevant, however, only in that it subordinates Stephanie's dower interest to Huntington's mortgage interest, giving Huntington's interest greater priority than hers. See *In re Hill* (Bankr.Ct.S.D.Ohio 1981), 11 B.R. 217, 219–220 (a spouse's dower interest is "calculated on the entire fair market value of the real property, but subordinated to the claims of any mortgagees").

{¶ 16} In summary, because Harold was seised of the entire Bayford Court property during his marriage, Stephanie's dower interest must be determined from the entire fair market value of the property. Accordingly, we sustain Stephanie's first assignment of error.

[8] {¶ 17} By her second assignment of error, Stephanie argues that the trial court ordered the use of the wrong table to determine the present value of her dower interest. We agree.

{¶ 18} In any action involving a judicial sale, a court must determine the present value and priority of a dower interest "in accordance with section 2131.01 of the Revised Code." R.C. 2103.041. In turn, R.C. 2131.01 states that "[p]resent values for probate matters shall be the values determined for Ohio estate tax purposes pursuant to division (B) of section 5731.01 of the Revised Code." Under R.C. 5731.01(B), present value is defined as

---

**1.** Although *Mandel* was decided over a century ago, the language of the dower statute in 1889 was sufficiently similar to today's statute that *Mandel* remains controlling law. Compare R.C. 2103.02 (quoted above) to R.S. 4188 (see 84 Ohio Laws 132, 135) ("A widow or widower who has not relinquished or been barred of the same, shall be endowed of an estate for life in one-third of all the real property of which the deceased consort was seized as an estate of inheritance at any time during the marriage * * *").

[T]he price at which such property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts. All relevant facts and elements of value as of the valuation date shall be considered in determining such value.

The rulings and regulations of the internal revenue service and decisions of the federal courts defining the principles applicable in determining fair market value for purposes of the federal estate tax imposed by Subchapter A, Chapter 11 of the Internal Revenue Code of 1954, 26 U.S.C.2001, as amended, shall be applied in determining fair market value * * *.

{¶ 19} In the case at bar, the trial court ordered the parties to use the Bowditch Contingent Dower Table to determine the present value of Stephanie's dower interest. The parties do not dispute that the Bowditch table is not part of the rules and regulations of the Internal Revenue Service ("IRS") applicable in determining fair market value for purposes of federal estate tax. Because R.C. 5731.01(B) requires the use of an applicable IRS table, we conclude that the trial court erred in ordering the parties to use the Bowditch table.

{¶ 20} Stand Energy, however, argues that this court cannot address this argument because Stephanie did not raise it in the trial court below and, thus, waived it. Our review of the briefing below reveals that both parties' arguments focused almost exclusively upon the appropriate table for determining the present value of Stephanie's dower interest. Although Stephanie originally advocated using a different IRS table, her argument that Ohio law mandated the use of an IRS table, and not the Bowditch table, preserved that issue for appeal. Thus, we conclude that Stephanie did not waive this argument.

{¶ 21} Accordingly, we sustain Stephanie's second assignment of error. We note that in ruling upon this assignment of error we do not determine which particular IRS table is appropriate here. Rather, we leave that issue for the trial court to decide on remand.

{¶ 22} For the foregoing reasons, we sustain both of Stephanie's assignments of error, we reverse the judgment of the Franklin County Court of Common Pleas, and we remand this cause to that court for further proceedings in accordance with law and this opinion.

Judgment reversed
and cause remanded.

BRYANT and BOWMAN, JJ., concur.

BOWMAN, J., retired, of the Tenth Appellate District, sitting by assignment.