In re Juan E. ROSARIO, Jr. and
Stacey I. Rosario, Debtors.

No. 08–14392.

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

March 9, 2009.

Susan M. Gray, Susan M. Gray Attys. & Counselors at Law, Rocky River, OH, for Debtors.

## MEMORANDUM OF OPINION

PAT E. MORGENSTERN–CLARREN, Bankruptcy Judge.

DLJ Mortgage Capital, Inc., which holds a mortgage lien on the debtors' real property located at 21920 Country Way, Strongsville, Ohio, moves for relief from stay and abandonment. The chapter 7 trustee opposes the motion on the ground that debtor Stacey Rosario's unreleased dower interest in the property is superior to DLJ's lien, and that the dower interest creates value for the unsecured creditors which should not be abandoned.[1] As discussed below, the court finds that the dower interest has priority over DLJ's lien, and that the dower interest is calculated by reference to the entire value of the property without reduction for the DLJ lien. The court finds additionally that the dower interest provides value to the estate and the trustee is not required to abandon it. The creditor did, however, prove that it is entitled to relief from stay to proceed in state court with a foreclosure sale.

### JURISDICTION

Jurisdiction exists under 28 U.S.C. § 1334 and General Order No. 84 entered by the United States District Court for the Northern District of Ohio. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (K), and (O).

### FACTS

The trustee and DLJ submitted the matter for decision on these stipulated facts:[2]

1. The Debtors, Juan and Stacey Rosario, were married in October 1999. They have remained married since that time. Neither of the Debtors is deceased.

2. Juan Rosario purchased the real property located as 21920 Country Way, Strongsville, Ohio 44149 (permanent parcel no. 392–11–067) (the "Property") from Robert and Deanne Krosky (the "Krosky's") [sic].

3. A General Warranty Deed ("Deed") was recorded on May 9, 2006 by instrument number 200605090672, conveying title in the Property to Juan E. Rosario.

4. Stacey Rosario's name does not appear on the Deed, nor is any reference made to her in the Deed.

5. The purchase price ("Purchase Price") of the Property was $422,000.00.

6. Juan Rosario executed and delivered to WMC Mortgage Corp. an Adjustable Rate Note ("Note") dated May 4, 2006 in the principal amount of $337,600.00.

7. The Noted evidenced a loan made to Juan Rosario, the proceeds from which were used to pay a portion of the Purchase Price.

8. The Note was secured by a Mortgage ("Mortgage") dated May 4, 2006, which was executed and delivered by Juan Rosario to WMC Mortgage Corp.

9. The Mortgage was filed for record with the Recorder of Cuyahoga County on May 9, 2006 as Instrument Number 200605090673.

---

1. Docket 50, 79, 80, 83.

2. Docket 86.

10. Stacey Rosario did not sign the Note, nor did she sign the Mortgage. Neither the Note nor the Mortgage made any reference to Stacey Rosario.

11. Prior to Juan Rosario's purchase of the Property, neither he nor Stacey Rosario held any ownership interest in the Property.

12. Subsequent to the execution and recording of the Mortgage, the debt and security interest issued and held by WMC Mortgage was transferred first to UBS Warburg Real Estate Securities (assignment recorded April 24, 2008 at Instrument Number 200804240580). The Trustee does not dispute that the Creditor has standing to assert the right to enforce the Note and as the record holder of the mortgage interest.

13. Stacey Rosario has an inchoate dower interest ("Dower Interest") in the Property pursuant to Ohio Revised Code § 2103.02. The Dower Interest has not been released.

14. When the Debtors filed this bankruptcy case, Stacey Rosario's unreleased Dower Interest became property of her bankruptcy estate pursuant to 11 U.S.C. § 541.

15. As of the date of the filing of the bankruptcy, both of the Debtors were age 35.

16. The Cuyahoga County Auditor lists the Property as having a market value of $357,000. The Debtor's [sic] Motion also states that the value of the property is $357,000.

DLJ filed a brief in support of its position, the trustee filed a brief in opposition, and DLJ replied.[3]

### POSITIONS OF THE PARTIES

DLJ contends that it is entitled to relief from the automatic stay under 11 U.S.C. § 362 because Juan[4] is in default under the terms of the note and mortgage, and DLJ's interest is not adequately protected by payments or equity in the property. Further, DLJ seeks to require the chapter 7 trustee to abandon the property claiming that the DLJ lien is superior to the dower interest, leaving no equity in the property for the trustee. DLJ also asserts, alternatively, that (1) the dower interest cannot be valued because it is not yet vested; (2) the dower interest should not be valued at this time, because it is not the subject of a judicial sale; (3) Ohio law requires use of the Bowditch Table if the dower interest is valued, since this is not a judicial foreclosure sale; or (4) Ohio Revised Code § 2103.041 may require use of the IRS tables to value the dower interest. In any event, DLJ opposes use of the American Experience Table to value the dower interest.[5]

The trustee counters that Stacey's dower interest has priority because (1) it came into existence before DLJ obtained its mortgage; and (2) Stacey did not release it. Giving that interest priority over the DLJ lien, and calculating the value of the interest under the American Experience Table, the interest has value for the bene-

---

3. Docket 88, 89, 90.

4. To avoid confusion, the Rosarios will be referred to by their first names.

5. DLJ makes an additional argument that Stacey is entitled to a homestead exemption in the property, which somehow weighs in DLJ's favor in this dispute. Docket 88 at 8. The property at issue is not Stacey's residence, and she did not claim a homestead exemption in this property. The court will not address this issue further other than to cite DLJ's counsel to FED. R. BANKR P. 9011(b).

fit of Stacey's unsecured creditors, and should not be abandoned.

### DISCUSSION

#### A. Stacey's Contingent Dower Interest is Property of the Estate

 Ohio is one of the few states that still permits a spouse to claim a dower interest in real property. That interest is governed by Ohio Revised Code § 2103.02, which provides, in relevant part:

A spouse who has not relinquished or been barred from it shall be endowed of an estate for life in one third of the real property of which the consort was seized as an estate of inheritance at any time during the marriage. Such dower interest shall terminate upon the death of the consort except:

(A) To the extent that any such real property was conveyed by the deceased consort during the marriage, the surviving spouse not having relinquished or been barred from dower therein;

(B) To the extent that any such real property during the marriage was encumbered by the deceased consort by mortgage, judgment, lien except tax lien, or otherwise, or aliened by involuntary sale, the surviving spouse not having relinquished or been barred from dower therein. If such real property was encumbered or aliened prior to decease, the dower interest of the surviving spouse therein shall be computed on the basis of the amount of the encumbrance at the time of death of such consort or at the time of such alienation, but not upon an amount exceeding the sale price of such property.

\* \* \*

Ohio Rev.Code § 2103.02.

In other words, either spouse is entitled to a one-third dower interest in real property unless it has been relinquished or barred. Under this doctrine, whenever a married person buys real estate in Ohio, the married person's spouse automatically receives a dower interest. *Standard Fed. Bank v. Staff,* 168 Ohio App.3d 14, 20, 857 N.E.2d 1245, 1249–50 (Ohio Ct.App.2006). While the title-holding spouse is alive, the other spouse's right to dower is contingent, or inchoate. The dower right vests only on death, as provided for by statute. *See* Ohio Rev.Code § 2103.02; *see also Deutsche Bank Trust Co. Amers. v. Smith,* No. 89738, 2008 WL 2349289, at \*5 (Ohio Ct.App. June 10, 2008), *appeal not allowed,* 120 Ohio St.3d 1417, 897 N.E.2d 652 (2008); *Liberty Folder Co. v. Anderson,* 86 Ohio App. 399, 402, 90 N.E.2d 409, 411 (Ohio Ct.App.1949). Nevertheless, the contingent dower interest has value if the property is sold before the death of the title-holding spouse. *Stand Energy Corp. v. Epler,* 163 Ohio App.3d 354, 358, 837 N.E.2d 1229, 1232 (Ohio Ct.App.2005). When an individual with a contingent dower interest in property files a bankruptcy case, that interest becomes property of the bankruptcy estate. *See In re Wycuff,* 332 B.R. 297, 301 (Bankr.N.D.Ohio 2005); *Menninger v. Mortgage Electronic Registration System (In re Bowling),* 314 B.R. 127, 131 (Bankr. S.D.Ohio 2004).

In this case, Stacey has a contingent dower interest in the property, which interest has not been relinquished or barred, and which became property of her bankruptcy estate.

#### B. Juan Holds Legal Title to the Property, Subject to the Mortgage Lien

 The starting point for valuing a dower interest is to identify the spouse's interest in the real property. *See Stand . Energy Corp.,* 163 Ohio App.3d at 358, 837 N.E.2d 1229. The spouse's interest is de-

termined by state law, in this case Ohio's. *See Florida Dept. of Revenue v. Piccadilly Cafeterias, Inc.,* —— U.S. ——, 128 S.Ct. 2326, 2339, 171 L.Ed.2d 203 (2008) (citing *Travelers Casualty and Surety Co. of America v. Pacific Gas and Elec. Co.,* 549 U.S. 443, 127 S.Ct. 1199, 167 L.Ed.2d 178 (2007)).

Ohio law originally viewed a mortgage as an actual conveyance of real property, giving rise to cases holding that a title-holding spouse did not acquire legal title to the property, but instead had only equitable title obtained through possession. *See, e.g. In re Hays,* 181 F. 674 (6th Cir.1910); *Unger v. Leiter,* 32 Ohio St. 210 (1877); *Culver v. Harper,* 27 Ohio St. 464 (1875). Without the convergence of both legal and equitable title, the title-holding spouse could not be "seized as an estate of inheritance," to which a dower interest could attach. *Kern v. Kern,* 24 Ohio C.D. 22, 1912 WL 705, at *2 (1912), *aff'd,* 87 Ohio St. 481, 102 N.E. 1126 (1912).

 As early as 1904, however, Ohio courts recognized mortgages as liens on real property, rather than as conveyances of legal title to the property.

> If this be a fact the seizin of the mortgagor was not merely a fictitious and instantaneous and incidental seizin divested at once and permanently by the same act and transaction which conveyed the legal title to him, but he was seized of an estate of inheritance in the land, which was not yet divested by broken condition, or at all at the time of his death.
>
> \* \* \*
>
> No condition of this character is present—nothing to make absolute the mortgage—no step taken to foreclose the equity of redemption, or to reduce the land to possession, and no right arose in favor of the vendor which he might thus assert. It would seem that nothing

could more completely define an interest of the husband which would bear the dower right of a wife or widow than these facts describe.

*Hickey v. Conine,* 17 Ohio C.D. 369, 1904 WL 691, at *5 (Ohio Cir.1904), *aff'd* 71 Ohio St. 548, 74 N.E. 1137 (1905). In *Levin v. Carney,* 161 Ohio St. 513, 120 N.E.2d 92 (1954), the Supreme Court of Ohio acknowledged that shift in the law.

> Originally a mortgage was considered an absolute sale of the lands by the mortgagor to the mortgagee, subject to the conditions named in the mortgage.... As time went on, chancery courts became more liberal in their pronouncements regarding the rights of a mortgagor, by adopting the theory that a mortgage was a mere security for a debt.

*Levin,* 161 Ohio St. at 516–17, 120 N.E.2d 92. The court then presented the following question: "Considering this evolution of the law respecting mortgages, who is the owner of mortgaged property?" *Id.* at 518, 120 N.E.2d 92. After reviewing legal principles discussed in existing case law, the *Levin* court determined that:

> Applying these principles to the problem to be resolved, it would appear that until a mortgage is foreclosed and a sale consummate, or until a mortgagee obtains possession by ejectment proceedings, the fee to the mortgage real estate, as stated in *Martin v. Alter, supra*[, 42 Ohio St. 94, 1884 WL 206,] remains in the mortgagor. He is the person with the right to the use and enjoyment of, and the dominion over, such real estate. *The real and beneficial use belongs to him.* He is entitled to the usufruct, rents and profits. Until he is divested of his fee, he is the owner of the property.

*Id.* at 520–21, 120 N.E.2d 92 (emphasis added). Therefore, a mortgagor in possession is the owner of both the legal and equitable interests in the property, and is "seized as an estate of inheritance," while the mortgagee has a lien only. *See Hunter Savings Assoc. v. Georgetown of Kettering Ltd.*, 14 B.R. 72, 80 (Bankr.S.D.Ohio 1981); *see also CitiMortgage, Inc. v. Guthrie*, 175 Ohio App.3d 115, 119, 885 N.E.2d 303, 305 (Ohio Ct.App.2008).

Based on Ohio law, when Juan purchased the property, he obtained both the legal and equitable interest in it, while the lender had a lien on the property to secure payment of the note. As a result, Juan was "seized as an estate of inheritance" in the property when he purchased it.

## C. The Unreleased Dower Interest Has Priority Over the Mortgage

 "[I] nterests in property are normally determined under the age-old principle: first in time, first in right." *In re Wycuff*, 332 B.R. at 302 (citing *United States v. McDermott, et al.*, 507 U.S. 447, 113 S.Ct. 1526, 123 L.Ed.2d 128 (1993)); *see also Deutsche Bank*, 2008 WL 2349289, at *3 (Ohio Ct.App. June 10, 2008) (citing Ohio Revised Code § 2103.02 and *Jewett v. Feldheiser*, 68 Ohio St. 523, 67 N.E. 1072 (1903)). Dower is no exception to this rule. *Id.* (citing *Central Trust Co. v. Gilardi*, 186 N.E.2d 771 (Ohio Ct.App.1962)). Based on this general rule, if a couple is married before property is mortgaged, the dower interest has priority over the mortgage lien. Quite often, however, when a mortgage is executed by a married person, the non-title holding spouse also signs the mortgage. That signature operates to subordinate the dower interest for the benefit of the creditor lending money, but not as to all creditors. *Stand Energy Corp.*, 163 Ohio App.3d at 360, 837 N.E.2d 1229. "Thus any document that intends to convey or mortgage an interest in the property is not effective as to the non-title-holding spouse's dower interest unless that spouse has also signed the document." *Standard Fed. Bank*, 168 Ohio App.3d at 20, 857 N.E.2d 1245. Here, Stacey did not sign the mortgage; therefore, she did not voluntarily subordinate her contingent dower interest to DLJ's mortgage lien.

DLJ relies principally on *Welch v. Buckins*, 9 Ohio St. 331 (1859) for the proposition that as a purchase money mortgage, its lien is superior to Stacey's dower interest.[6] Quoting prior case law, the *Welch* court held that a dower interest is always subordinate to a purchase money mortgage. *Id.* at 332. The court's decision was based on the view that the spouse holding title to mortgaged real estate holds only a technical seizin, and is not "seized as an estate of inheritance" to which dower could attach. *Id.*[7]

---

**6.** DLJ also relies on *Lipps v. Lipps*, 87 N.E.2d 823 (Ohio Ct.App.1949) to establish that its mortgage lien has priority over the dower interest. The holding in *Lipps*, however, was based on the fact that the wife had a one-half ownership interest in the subject property, which is not the case here.

**7.** DLJ cites several other cases in support of the purchase money rule. They are all, however, materially distinguishable from this case because the wife in each case also signed the mortgage. *Jewett v. Feldheiser*, 68 Ohio St. 523, 67 N.E. 1072 (1903); *Mandel v. McClave*, 46 Ohio St. 407, 22 N.E. 290 (1889); *Disher*

*v. Disher*, 35 N.E.2d 582 (Ohio Ct.App.1936); *Koester v. McKinney*, 17 Ohio Law Abs. 441, No. 307, 1934 WL 1750 (Ohio Ct.App. May 31, 1934) [cited by DLJ as *Koester v. Koester*]; *Canan v. Heffey*, 27 Ohio App. 430, 161 N.E. 235 (Ohio Ct.App.1927). Other cases cited by DLJ to support the purchase money rule are also materially distinguishable for different reasons. *See In re Hays*, 181 F. 674 (6th Cir.1910) (wife waived dower on sale of property); *Unger v. Leiter*, 32 Ohio St. 210 (1877) (wife asked to be paid the value of her contingent dower after satisfaction of the mortgages); *Culver v. Harper*, 27 Ohio St. 464 (1875)

After *Welch*, the Supreme Court of Ohio revisited the issue of dower, explaining the effect of a purchase money mortgage on seisin.

> Nor is the seisin sufficient when the husband takes a conveyance in fee, and at the same time mortgages the land back to the grantor, or to a third person, to secure the purchase money in whole or in part. Dower cannot be claimed as against rights under that mortgage. The husband is not deemed sufficiently or beneficially seised by such an instantaneous passage of the fee in and out of him, to entitled [sic] his wife to dower as against the mortgage, and this conclusion is agreeable to the manifest justice of the case.

*Nichols v. French*, 83 Ohio St. 162, 168, 93 N.E. 897, 898 (1910); *but cf. Hickey, supra.* This is no longer the case. Ohio law does not view a purchase money mortgage as the "instantaneous passage of the fee in and out of [the husband]." Instead, because Ohio views a mortgage as a lien, the title—holding spouse retains legal title-it does not pass to the mortgagee.

> Therefore, because a mortgagor possesses both legal and equitable title until default and foreclosure ... property defined in the dower statute as "seized of inheritance" must be the full value of the property. The case law on dower, however, has yet to acknowledge the shift in Ohio law to the lien theory in which a mortgagee possesses only a security interest and not legal title.

*In re Miller*, 151 B.R. 800, 803–04 (Bankr. N.D.Ohio 1992). As a result, the "purchase money rule" does not prevent a mortgagor from becoming "seized as an estate of inheritance" in the mortgaged property, and a dower interest attaches to the full value of such property, unless the non-title holding spouse voluntarily subordinates the dower interest.[8]

Juan and Stacey Rosario were married in October 1999. Juan purchased and mortgaged the property on May 4, 2006, without Stacey signing the note or mortgage. At the time of purchase, Juan obtained both legal and equitable title to the property, and he became "seized as an estate of inheritance" in it. Because Stacey's signature was required to subordinate her dower interest, and that signature was not obtained, her dower interest is superior to DLJ's mortgage lien. Accordingly, the dower interest is entitled to priority in the proceeds from the sale of the property.

### D. *Value of the Dower Interest*

■ When real property is sold at a judicial sale, the value of a dower interest is determined under Ohio Revised Code § 2103.041:

> In any action involving the judicial sale of real property for the purpose of satisfying the claims of creditors of an owner of an interest in the property, the spouse of the owner may be made a party to the action, and the dower interest of the spouse, whether inchoate or otherwise, may be subjected to the sale without the consent of the spouse. The court shall determine the present value and priority of the dower interest in accordance with section 2131.01 of the Revised Code and shall award the

---

(marriage occurred after purchase and mortgage of property); *George v. George*, 51 Ohio App. 174, 200 N.E. 145 (Ohio Ct.App.1924) (wife assumed the mortgages).

**8.** This result is the same as that in one of the unreported cases cited by DLJ. In *Ford Con-*

*sumer Finance Company v. Wells*, No. 332749, Cuyahoga County Court of Common Pleas, the state court held that a defendant's spouse, who had not released her dower interest, had a dower interest with priority over the plaintiff's mortgage.

spouse a sum of money equal to the present value of the dower interest, to be paid out of the proceeds of the sale according to the priority of the interest. To the extent that the owner and the owner's spouse are both liable for the indebtedness, the dower interest of the spouse is subordinate to the claims of their common creditors.

OHIO REV.CODE § 2103.041. The value of the dower interest is determined by the present value of a life estate in the property, based upon the age of the spouse with the dower interest.

### 1. *Basis for Calculation*

 The parties disagree as to whether the dower interest should be calculated on the fair market value of the property (the trustee), or only upon the surplus after payment of the mortgage note (DLJ). When mortgages were viewed as conveyances, purchase money mortgages always had priority over dower interests. Accordingly, the dower interest was calculated on the surplus after payment of the underlying purchase money debt. Now, however, calculation of the dower interest is dependent on the priority of the interest. Where the dower interest has priority, the value of that interest is calculated on the value of the entire property, not just upon the surplus remaining after payment of the mortgage note. *See In re Miller*, 151 B.R. at 804; *Hickey*, 1904 WL 691, at *6; *Nichols*, 83 Ohio St. at 167–68, 93 N.E. 897; *Stand Energy Corp.*, 163 Ohio App.3d at 358, 837 N.E.2d 1229. Because Stacey's dower interest has priority over DLJ's mortgage lien, the dower interest must be calculated on the full fair market value of the property.

### 2. *Applicable Present Value Table*

Over time, Ohio has used three different methods to arrive at the present value of a dower interest: the Bowditch Table, the American Experience Table, and the Internal Revenue Code tables. The Bowditch Table is used in some of the oldest cases, *see for example, Black's Adm'r v. Kuhlman*, 30 Ohio St. 196, 200 (1876). In 1932, the Ohio legislature adopted Ohio Revised Code § 2301.01, which provided that the American Experience Table should be used for calculating a dower interest in connection with a judicial sale. In 1999, the legislature adopted Ohio Revised Code § 2103.041, which provides that on a judicial sale of real estate, the dower interest is calculated in accordance with § 2131.01. That section in turn refers to § 5731.01(B), which in turn requires application of Subchapter A, Chapter 11 of the Internal Revenue Code. DLJ urges use of the Bowditch Table to calculate the interest, while the trustee argues that the American Experience Table should be used.

 The value of the dower interest is significant at this point in the case because DLJ asks that the trustee be required to abandon the interest. To succeed, DLJ must prove that the property interest is of inconsequential value and benefit to the bankruptcy estate, or is burdensome to the estate. 11 U.S.C. § 554. Regardless of which table is used, DLJ did not meet this burden. In fact, DLJ's own calculations under the Bowditch Table using the stipulated value place the value of Stacey's dower interest between $12,888.00 and $14,387.00.[9] Alternatively, a sale at the stipulated value of $357,000.00 using the IRS multiplier would produce a value of roughly $91,000.00.[10] And further in the

---

9. Docket 88 at 7.

10. The stipulated value of the property is $357,000.00. Because a dower interest is in

alternative, a sale at the stipulated value of $357,000.00 using the American Experience Table would produce a value of about $99,000.00. The property might also be sold at foreclosure sale for the minimum bid of two-thirds of appraised value (assuming the appraised value to be $357,000.00), in which case the interest would be worth approximately $60,000.00. *See* OHIO REVISED CODE § 2329.20. Or, the trustee might seek to sell the property under 11 U.S.C. § 363. After any such sale, and payment of real estate taxes, the trustee will be next in line to receive payment of the dower interest. Therefore, under any scenario, Stacey's dower interest has value for the benefit of unsecured creditors and DLJ did not prove that the trustee should be required to abandon that interest.[11] The motion to abandon is, therefore, denied.

### E. *Relief from Stay*

A court must grant a party relief from the automatic stay under 11 U.S.C. § 362(d), if the party establishes cause (including a lack of adequate protection), a lack of equity in the property, or that the property is unnecessary to an effective reorganization. 11 U.S.C. § 362(d). DLJ's motion states that Juan has failed to make adequate protection payments since the inception of this case, and that the total amount of outstanding liens against the property (approximately $422,000) far exceeds the market value of the property ($357,000). The trustee does not contest these allegations. DLJ's motion states a prima facie case for relief from stay and is,

therefore, granted under 11 U.S.C. § 362(d), subject to the determinations made in this memorandum of opinion.

### CONCLUSION

For the reasons stated, DLJ Mortgage Capital, Inc.'s motion for relief from stay is granted and the motion to abandon the property is denied. The court will enter a separate order consistent with this opinion.

### ORDER GRANTING MOTION OF DLJ MORTGAGE CAPITAL, INC. FOR RELIEF FROM STAY AND DENYING MOTION OF DLJ MORTGAGE CAPITAL, INC. FOR ABANDONMENT

For the reasons stated in the memorandum of opinion entered this same date, DLJ Mortgage Capital, Inc.'s motion for relief from stay (docket 50) is granted. The chapter 7 trustee's objection to the motion for abandonment is sustained (docket 79), and, therefore, DLJ Mortgage Capital, Inc.'s motion to abandon the property located at 21920 Country Way, Strongsville, Ohio (docket 50) is denied.

IT IS SO ORDERED.

---

a one-third life estate, the stipulated value is multiplied by one-third, leaving $119,000.00. The applicable multiplier found in Subchapter A, Chapter 11 of the Internal Revenue Code for calculating the present value of a life estate for age 35 in June 2008 is .76506. That number multiplied by $119,000.00 yields a life estate value of $91,042.14. This would be

the value of the dower interest in the property, assuming the property actually sells for $357,000.00.

11. The issue of the actual dollar amount of the dower interest is not before the court, and will not be addressed further.