Kennedy, J.,
concurring in the answers to the certified questions and concurring in the opinion in part.
{¶ 93} Respectfully, while I concur with the answers to both questions, I concur with the analysis only in part. With regard to the second certified question, I agree that the expiration of an unrecorded oil and gas lease and the *513 reversion to the lessor is not a title transaction under R.C. 5301.56(B)(3)(a) of the Ohio Dormant Minerals Act (“ODMA”).
{¶ 94} As to the first certified question — whether a recorded oil and gas lease is a “title transaction” under the ODMA — I agree with the majority that the answer is yes, but I do not agree with the analysis. I reject the dissenting view that the failure of the General Assembly to enact the initial proposed ODMA language, which specifically included leases, manifests the legislature’s intention not to include a lease as a saving event. See S.B. No. 223, as introduced in the 117th General Assembly. In my view the General Assembly’s replacement of the four specific transactions “conveyed, leased, transferred, or mortgaged” as they appeared in the bill as introduced with the more general term “title transaction” as finally enacted indicates that the General Assembly intended to broaden the types of transactions that may serve as a saving event.
{¶ 95} However, because the majority answers the first certified question by relying, in part, on a determination of what interest in land a traditional oil and gas lease creates, I concur in the answer only.
{¶ 96} Petitioner North American Coal Royalty Company and amicus curiae the Ohio Oil and Gas Association argue that in order to answer the first question, it is not necessary to address whether an oil and gas lease creates a particular property interest, and to do so with this record and lack of briefing could have unintended negative consequences in the oil and gas industry. Because answering the narrow certified question requires only a consideration of the statutory provisions within the context of the Revised Code and the statutory scheme, I reject the majority’s analysis and write separately.
{¶ 97} The federal court’s first certified question is a narrow one: “Is the recorded lease of a severed subsurface mineral estate a title transaction under the ODMA, Ohio Revised Code § 5301.56(B)(3)(a)?”
{¶ 98} To answer this question requires an examination of the language of the statute and the intention of the General Assembly. In enacting our laws the legislature is presumed to know the meaning of words and to have used the words of the statute advisedly and to have expressed legislative intent by the use of words found in the statute. Wachendorf v. Shaver, 149 Ohio St. 231, 236, 78 N.E.2d 370 (1948), citing Shugars v. Williams, 50 Ohio St. 297, 34 N.E. 248 (1893). In keeping with the tenets of statutory construction, nothing may be read into the statute that is not within the manifest intention of the legislature as gathered from the statute itself. Id.
{¶ 99} The ODMA is part of the Marketable Title Act (“MTA”), R.C. 5301.47 et seq. While the ODMA does not define “title transaction,” the MTA defines that term as:
*514 [A]ny transaction affecting title to any interest in land, including title by will or descent, title by tax deed, or by trustee’s, assignee’s, guardian’s, executor’s, administrator’s, or sheriffs deed, or decree of any court, as well as warranty deed, quit claim deed, or mortgage.
R.C. 5301.47(F).
{¶ 100} R.C. 5301.47(F) has not been amended since the MTA was enacted in 1961. Therefore, the definition of the term “title transaction” and the intention of the General Assembly were unchanged.
{¶ 101} The concurrence in part and dissent in part holds and amicus curiae state of Ohio argues that in order for a transaction to fall within the meaning of “title transaction,” the transaction must shift ownership, i.e., to be a title transaction, the transaction must dispossess the owner of his legal right to own the property. I disagree.
{¶ 102} The nonexhaustive list of examples of “title transactions” in R.C. 5301.47(F) includes “decree of any court” and “mortgage.” A close examination of these transactions demonstrates that the General Assembly intended that “affecting title” is not synonymous with shifting or impairing ownership.
{¶ 103} In Blakely v. Capitan, the court held that a 1968 court order determining that use restrictions in a deed were valid and enforceable was a title transaction within the meaning of the MTA. 34 Ohio App.3d 46, 48, 516 N.E.2d 248 (11th Dist.1986). Similarly, a mortgage by itself does not affect ownership. Absent foreclosure and sale of the property or a mortgagee extinguishing the mortgagor’s right to redeem, the owner remains the owner. “In Ohio, a mortgage is merely a security for a debt, and the legal and equitable title to the property remains in the mortgagor until the mortgage is foreclosed and a sale consummated, or until a mortgagee otherwise extinguishes the right of the mortgagor to redeem.” Fannie Mae v. Winding, 2014-Ohio-1698, 10 N.E.3d 799, ¶ 21 (12th Dist.), citing Stand Energy Corp. v. Epler, 163 Ohio App.3d 354, 2005-Ohio-4820, 837 N.E.2d 1229, ¶ 13 (10th Dist.); Kirshner v. Fannie Mae, 2012-Ohio-286, 969 N.E.2d 340, ¶ 16-17 (6th Dist.). See also Levin v. Carney, 161 Ohio St. 513, 520, 120 N.E.2d 92 (1954) (the legal and equitable title to mortgaged real estate remains in the mortgagor).
{¶ 104} There is nothing in R.C. 5301.47(F) that suggests that “affecting” is defined by other than its plain meaning, which is merely “to produce an effect on; to influence in some way.” Black’s Law Dictionary 68 (10th Ed.2014). And the operative word is “title,” which has a broader meaning than “ownership.” See id. at 1712 (title can also mean “[l]egal evidence of a person’s ownership rights in property”).
*515 {¶ 105} Therefore, in defining “title transaction” in R.C. 5301.47(F), the General Assembly did not intend “affecting title” to mean affecting ownership in the sense that the transaction must divest the property owner of title and/or ownership to the property.
{¶ 106} I agree with the majority that using the word “any” to modify “transaction” and “interest in land” in R.C. 5301.47(F) indicates a broad construction, but the real focal point of the language is the phrase “affecting title.” To discern its meaning we need look no further than the intention of the General Assembly and the context within the statutory scheme. As set forth below, I would hold that any transaction that asserts a claim or interest in any land and that must be recorded “affect[s] title.”
{¶ 107} The General Assembly enacted the MTA to simplify and facilitate land title transactions by permitting “persons to rely on a record chain of title as described in [R.C.] 5301.48 [i.e., an unbroken chain of title for 40 years or more], subject only to such limitations as appear in [R.C.] 5301.49.” R.C. 5301.55. This “marketable record title” is central to facilitating land title transactions, along with the “root of title.” R.C. 5301.47(A) and (E).
{¶ 108} As defined in the MTA, “marketable record title” is “a title of record, as indicated in [R.C. 5301.48], which operates to extinguish such interests and claims, existing prior to the effective date of the root of title [as provided in R.C. 5301.50].” R.C. 5301.47(A). “Root of title” is defined as the “conveyance or other title transaction” in the chain of title that creates the interest being claimed. R.C. 5301.47(E).
{¶ 109} “[M]arketable title acts are intended to operate in conjunction with, rather than as a substitute for, the recording statutes.” Spring Lakes, Ltd. v. O.F.M. Co., 12 Ohio St.3d 333, 338, 467 N.E.2d 537 (1984) (Holmes, J., concurring). “[T]he purpose of the recording statutes is to give notice to all persons subsequently acquiring rights or interests in the land.” Marshall v. Ebling, 70 Ohio App. 145, 155, 45 N.E.2d 318 (7th Dist.1942). As noted by the Supreme Court of Rhode Island, “[t]he general purpose of land-recording statutes is to provide a public record of transactions affecting title to land.” (Emphasis added.) In re Barnacle, 623 A.2d 445, 447 (R.I.1993).
{¶ 110} “It is a well-settled rule of statutory interpretation that statutory provisions be construed together and the Revised Code be read as an interrelated body of law.” State v. Moaning, 76 Ohio St.3d 126, 128, 666 N.E.2d 1115 (1996). Where statutes address the same subject matter, “[they] must be construed in pari materia and harmonized so as to give full effect to the statutes.” State ex rel. Westlake v. Corrigan, 112 Ohio St.3d 463, 2007-Ohio-375, 860 N.E.2d 1017, ¶ 20.
*516 {¶ 111} Because a marketable title requires an easily traceable chain of recorded title, consideration of the recording statutes is necessary.
{¶ 112} All the examples in the nonexhaustive list of transactions in R.C. 5301.47(F) have a companion recording statute. After issuance of a certificate of transfer by the probate court, title to real property passing by 'will or descent is recorded pursuant to R.C. 2113.62. Mortgages are to be recorded in a manner consistent with R.C. 5301.23. In the case of a judgment or decree of court, R.C. 5309.53 provides that no such judgment or decree “shall be a hen upon or affect registered land, or any interest therein” unless it is filed in the office of the county recorder. All the remaining illustrative examples refer to deeds, which are required to be recorded in accord with R.C. 5301.25(A).
{¶ 113} “All deeds, land contracts * * * and instruments of writing * * * for the conveyance or encumbrance of lands” are required to be recorded in the office of the county recorder in which the land is situated. R.C. 5301.25(A). Separate from that provision, R.C. 5301.09 requires that “all leases, licenses, and assignments thereof, * * * given or made concerning lands * * * by which any right is granted to operate or to sink or drill wells thereon” for oil and/or gas are required to be recorded in the lease record in the office of the county recorder in which the land is situated.
{¶ 114} A cursory comparison of R.C. 5301.25 (referring to instruments for “the conveyance or encumbrance of lands”) and 5301.09 (referring to oil and gas leases as merely “given or made concerning lands”) could lead to the conclusion that the milder, less direct language of the latter reflects the General Assembly’s intent to diminish the legal effect of an oil and gas lease on an interest in land. However, such a conclusion would ignore the interplay of the recording statutes and defy the rules of statutory construction applicable to general versus special provisions.
{¶ 115} In considering an earlier, almost identical version of R.C. 5301.09, this court held that the recording provision for an oil and gas lease was “a special statutory provision” that operated as an exception to the general recording statute, which would otherwise include the type of transaction contained in the special provision. Northwestern Ohio Natural Gas Co. v. Tiffin, 59 Ohio St. 420, 441, 54 N.E. 77 (1899), citing R.S. 4112a (predecessor to R.C. 5301.09). Therefore, but for the special recording provision, an oil and gas lease would be recorded in accord with R.C. 5301.25.
{¶ 116} Harmonizing the provisions of the MTA with the recording statutes contained in R.C. Chapters 2113, 5301, and 5309 reveals a commonality with the examples of title transactions listed in R.C. 5301.47(F). The examples are claims or interests against, or in, land that must be recorded pursuant to the Revised Code. Therefore, construing the recording statutes and R.C. 5301.47(F) in pari *517 materia, I would hold that any transaction that must be recorded must be a “title transaction” within R.C. 5301.47(F) because the purpose of a recording requirement is to “provide a public record of transactions affecting title to land.” (Emphasis added.) In re Barnacle, 623 A.2d at 447.
Jones Day, Jeffery D. Ubersax, and Dean C. Williams; and Thornburg & Bean and Charles H. Bean, for petitioner North American Coal Royalty Company.
Roetzel & Andress, L.P.A., Robert B. Graziano, and Michael R. Traven; and Reed Smith, L.L.P., Nicolle R. Snyder Bagnell, and Kevin C. Abbott, for petitioners Chesapeake Exploration, L.L.C., CHK Utica, L.L.C., Larehmont Resources, L.L.C., Dale Pennsylvania Royalty, L.P., Dale Property Services Penn, L.P., and Total E&P USA, Inc.
Tzangas, Plakas, Mannos, Ltd., Gary A. Corroto, Lee E. Plakas, and Joshua E. O’Farrell, for respondents.
Vorys, Sater, Seymour & Pease, L.L.P., and John K. Keller, in support of neither side for amicus curiae Ohio Oil and Gas Association.
Michael DeWine, Attorney General, Eric E. Murphy, Solicitor General, and Samuel C. Peterson, Deputy Solicitor, in support of respondents for amicus curiae the state of Ohio.
Ice Miller, L.L.P., Matthew L. Fornshell, and Nicole R. Woods, in support of petitioners for amicus curiae Bedway Land & Minerals Company.
{¶ 117} The January 28, 2009 oil and gas lease herein bears the stamp of the Harrison County recorder stating that it was filed for record in that office. Therefore, I agree with the majority that the answer to the first certified question is affirmative, but not with the majority’s analysis: a recorded oil and gas lease is a title transaction pursuant to R.C. 5301.56(B)(3)(a). I also agree with the negative answer to the second certified question — that the expiration of an unrecorded oil and gas lease and the reversion to the lessor is not. Accordingly, I respectfully concur in the answers but concur with the opinion only in part.