**In re Jenny FOSTER, Reese Foster, Debtors.**

**Susan L. Rhiel, Trustee, Plaintiff,**

**v.**

**BAC Home Loans Servicing, LP, et al., Defendant(s).**

**Bankruptcy No. 09–63067.
Adversary No. 10–2016.**

United States Bankruptcy Court, S.D. Ohio, Eastern Division.

March 23, 2011.

Treisa L. Martin, Columbus, OH, for Plaintiff, Trustee.

Amelia A. Bower, Columbus, OH, for Defendants.

### MEMORANDUM OPINION AND ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

C. KATHRYN PRESTON, Bankruptcy Judge.

This cause came on for consideration of Trustee's Motion for Summary Judgment (the "Motion") (Doc. 21), filed by Susan L. Rhiel (the "Trustee" or "Plaintiff"), the Response (Doc. 24) filed by BAC Home Loans Servicing, LP (the "Defendant" or "BAC"), and Trustee's Reply (Doc. 29) filed in the above captioned adversary proceeding. The Court having considered the record and the arguments of the parties makes the following findings and conclusions.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the General Order of reference entered in this District. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (K). Venue is properly before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

This adversary proceeding stems from the Chapter 7 bankruptcy case of Reese Foster and Jenny Foster (collectively, the "Debtors"). Trustee's amended complaint seeks a determination of the extent or validity of a mortgage held by BAC (the "Mortgage"). Trustee contends that the Mortgage grants a lien only on Mr. Foster's one-half interest in real property located at 7877 Lydia Drive, Lewis Center, Ohio, jointly owned by Debtors (the "Property"). Trustee argues that Mrs. Foster's one-half interest in the Property is not encumbered by the Mortgage because the Mortgage uses the term "Borrower" to denote the mortgagor, and "Borrower" is defined as Mr. Foster solely. Additionally, Trustee argues that the Mortgage does not satisfy the statute of frauds with respect to Mrs. Foster's conveyance of a lien on her one-half interest in the Property.

BAC argues in its response that Mrs. Foster's one-half interest in the Property is encumbered by the Mortgage because the Adjustable Rate Rider (the "Rider") amends the definition of "Borrower" to include Mrs. Foster.[1]

For the reasons stated below, the Court concludes that summary judgment should

---

1. BAC also argues that (1) Mrs. Foster is a surety, and (2) invokes the doctrine of *lis pendens*. Given the Court's decision herein, the Court need not address those arguments.

be entered in favor of BAC. The Court further concludes that BAC's request to dismiss the adversary proceeding should be granted.

## I. Applicable Law

### A. Standard of Review for Motions for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).[2] The party seeking summary judgment bears the initial burden of "informing the ... court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

If the movant satisfies this burden, the nonmoving party must then assert that a fact is genuinely disputed and must support the assertion by citing to particular parts of the record. Fed.R.Civ.P. 56(c)(1). The mere allegation of a factual dispute is not sufficient to defeat a motion for summary judgment; to prevail, the non-moving party must show that there exists some genuine issue of material fact. *See*

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When deciding a motion for summary judgment, all justifiable inferences must be viewed in a light most favorable to the non-moving party. *Matsushita Elec Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

The Sixth Circuit Court of Appeals has articulated the following standard to apply when evaluating a motion for summary judgment:

> [T]he moving [party] may discharge its burden by "pointing out to the ... court ... that there is an absence of evidence to support the nonmoving party's case." The nonmoving party cannot rest on its pleadings, but must identify specific facts supported by affidavits, or by depositions, answers to interrogatories, and admissions on file that show there is a genuine issue for trial. Although we must draw all inferences in favor of the nonmoving party, it must present significant and probative evidence in support of its complaint. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]."

---

**2.** Rule 56, in its current form, became effective on December 1, 2010, after this adversary proceeding was commenced. "Amendments to the Federal Rules of Civil Procedure govern proceedings after the date they are effective in an action then pending unless the Supreme Court specifies otherwise or the court determines that applying them in a particular action would be infeasible or work an injustice." *Martinez v. Hutton (In re Harwell),* 628 F.3d 1312, 1317 n. 4 (11th Cir.2010). The summary judgment standard now appears in Civil Rule 56(a) rather than, as it

formerly did, Civil Rule 56(c); however, the standard did not materially change. *See* Fed. R.Civ.P. 56(a) advisory committee's note (2010 Amendments) ("Subdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c)...."). Inasmuch as the amended rule does not change the standard for entry of summary judgment, application of "the amended version of [Civil] Rule 56 in this case is just and practicable and would not work a manifest injustice ..." *Farmers Ins. Exch. v. RNK, Inc.,* 632 F.3d 777, 782 n. 4 (1st Cir.2011).

*Hall v. Tollett,* 128 F.3d 418, 422 (6th Cir.1997) (internal citations omitted). A material fact is one whose resolution will affect the determination of the underlying action. *Tenn. Dep't of Mental Health & Mental Retardation v. Paul B.,* 88 F.3d 1466, 1472 (6th Cir.1996). An issue is genuine if a rational trier of fact could find in favor of either party on the issue. *Schaffer v. A.O. Smith Harvestore Prods., Inc.,* 74 F.3d 722, 727 (6th Cir.1996) (citation omitted). "The substantive law determines which facts are 'material' for summary judgment purposes." *Hanover Ins. Co. v. American Eng'g Co.,* 33 F.3d 727, 730 (6th Cir.1994) (citations omitted). However, determinations of credibility, weight to be given the evidence, and inferences to be drawn from the facts remain the province of the jury. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

In determining whether each party has met its burden, the court must keep in mind that "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...." *Celotex,* 477 U.S. at 323–24, 106 S.Ct. 2548. If otherwise appropriate, summary judgment may also be entered for a nonmoving party. Fed. R.Civ.P. 56(f); *K.E. Resources, LTD. v. BMO Fin. Inc. (In re Century Offshore Mgmt. Corp.),* 119 F.3d 409, 412 (6th Cir. 1997); *see also Celotex,* 477 U.S. at 326, 106 S.Ct. 2548 ("[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua sponte,* so long as the losing party was on notice that she had to come forward with all of her evidence.").

## B. Ohio Mortgage Law

 "Since the mortgage deed takes effect as a contract between the parties, the deed must be interpreted according to Ohio contract law." *Menninger v. Accredited Home Lenders (In re Morgeson),* 371

B.R. 798, 804 (6th Cir. BAP 2007); see also *Stein v. Creter (In re Creter),* 2007 WL 2615214, at *4, 2007 LEXIS 3088, at *11 (Bankr.N.D.Ohio 2007) (holding that "the Court must interpret the ... mortgage according to Ohio contract law in order to determine the extent of the [mortgagee's] interest.") (citing *Morgeson,* 371 B.R. at 804).

> In construing a written contract, the court's paramount objective is to ascertain and give effect to the parties' intention. Generally, courts presume that the parties' intent resides in the language they employ in the contract. When contract terms are unambiguous, courts will not, in effect, create a new contract by finding an intent not expressed in the clear contractual language.

*Rosepark Props. v. Buess,* 167 Ohio App.3d 366, 375, 855 N.E.2d 140 (Ohio Ct.App.2006) (citations omitted). "When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties." *Cincinnati Ins. Co. v. CPS Holdings, Inc.,* 115 Ohio St.3d 306, 308, 875 N.E.2d 31(2007) (citation omitted).

 The interpretation of such a contract "is a matter of law and there is no issue of fact to be determined." *Inland Refuse Transfer Co. v. Browning–Ferris Industries, Inc.,* 15 Ohio St.3d 321, 322, 474 N.E.2d 271 (1984) (citation omitted). "If, however, the language is capable of two reasonable, but conflicting interpretations, then there is an issue of fact on what the parties intended." *Wells v. American Electric Power Co.,* 48 Ohio App.3d 95, 97, 548 N.E.2d 995 (Ohio Ct.App.1988). "It is not the responsibility or function of this court to rewrite the parties' contract in order to provide for a more equitable result." *Foster Wheeler Enviresponse v.*

*Franklin County Convention Facilities Auth.,* 78 Ohio St.3d 353, 362, 678 N.E.2d 519 (1997). "A contract 'does not become ambiguous by reason of the fact that in its operation it will work a hardship upon one of the parties thereto.'" *Foster Wheeler Enviresponse,* 78 Ohio St.3d at 362, 678 N.E.2d 519 (quoting *Ohio Crane Co. v. Hicks,* 110 Ohio St. 168, 172, 143 N.E. 388 (1924)). "A court will resort to extrinsic evidence in its effort to give effect to the parties' intentions only where the language is unclear or ambiguous, or where the circumstances surrounding the agreement invest the language of the contract with a special meaning." *Kelly v. Medical Life Ins. Co.,* 31 Ohio St.3d 130, 132, 509 N.E.2d 411 (1987) (citations omitted). Extrinsic evidence may include: (1) the circumstances that surrounded the transaction; (2) the parties' intended objectives in entering into the contract; and (3) any acts by the parties that demonstrate what they intended in the contract. *Crane Hollow, Inc. v. Marathon Ashland Pipe Line, LLC,* 138 Ohio App.3d 57, 740 N.E.2d 328, 339 (2000) (citations omitted).

## II. Factual Background

The facts pertinent to the resolution of this matter are without dispute and can be summarized as follows: Debtors filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on November 6, 2009. Debtors acquired title to the Property by Survivorship Deed on October 16, 2003. On October 14, 2005, Mr. Foster executed a promissory note (the "Note") payable to America's Wholesale Lender ("AWL") in the principal amount of $312,000. Debtors also executed and delivered to AWL the Mortgage granting a lien on the Property. AWL subsequently assigned all of its rights, title, and interest in the Mortgage to BAC. Mrs. Foster did not sign the Note. The Mortgage granted a lien on the Property (although the extent of that lien is the subject of this adversary proceeding). The Mortgage was then filed in the Office of the Delaware County Recorder on October 28, 2005.

On page 1 of the Mortgage, in paragraph (B), under the title "DEFINITIONS", the term "Borrower" is defined:

(B) "Borrower" is

REESE W. FOSTER, A MARRIED MAN

On page 3 of the Mortgage, the granting language reads:

... Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns and to the successors and assigns of MERS the following described property....

The final paragraph of the Mortgage, on page 16, states:

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Below this final paragraph are four signature lines. The first line was signed by Mr. Foster. Under the line is Mr. Foster's pre-printed name and the word "Borrower." Mrs. Foster signed the second signature line, under which Mrs. Foster's name is handwritten. Under that line is the pre-printed word "Borrower." Debtors both initialed each page of the Mortgage and were both named in the notary's acknowledgment.

On the same day, Debtors executed the Rider. Page 1 provides in pertinent part (emphasis added):

THIS ADJUSTABLE RATE RIDER is made this FOURTEENTH day of OCTOBER 2005, and is incorporated into and shall be deemed *to amend and supplement the Mortgage,* Deed of Trust, or

Security Deed (the "Security Instrument") of the same date *given by the undersigned ("Borrower")* to secure Borrower's Adjustable Rate Note to AMERICA'S WHOLESALE LENDER.

Page 6 of the Rider states the following: BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

Below this paragraph are four signature lines. The first line reflects Mr. Foster's signature, below which is his pre-printed name and the word "Borrower." Mrs. Foster signed the second signature line, and below the line, her name is handwritten beside the pre-printed word "Borrower." Debtors both initialed each page of the Rider.

## III. Analysis

### A. Pursuant to Ohio Mortgage Law, Mrs. Foster is a "Borrower" and Her One–Half Interest in the Property is Encumbered by the Mortgage.

■ Trustee relies on *Kindt v. ABN AMRO Mortgage Group, Inc. (In re Wallace)*, 2007 WL 6510864, 2007 Bankr.LEXIS 4651 (Bankr.S.D.Ohio Nov. 15, 2007) and *Menninger v. Mortgage Electric Reg. Systems, Inc. (In re Earl)*, 2010 Bankr.LEXIS 1993 (Bankr.S.D.Ohio July 2, 2010), to support her proposition that the Mortgage does not encumber Mr. Foster's one-half interest in the Property.

*Wallace* involved a factual situation similar to the case here. In that case, both spouses filed a joint Chapter 7 case. Both had signed the mortgage at issue and initialed each page. Only the husband's signature line included pre-printed text. The wife's signature line was added completely by hand. The bankruptcy court held that a mortgage does not encumber a signato-

ry's interest in real property, if the mortgage, although signed and acknowledged by the signatory, does not otherwise reference the signatory. *See Wallace*, 2007 WL 6510864, at *1, 2007 Bankr.LEXIS 4651, at *3. Because the Ohio Supreme Court has not ruled on this issue, the *Wallace* Court canvassed decisions from the highest courts in Missouri, Kentucky, and Tennessee, and concluded that the Ohio Supreme Court would draw the same conclusion: that conveyance of an interest in real estate does not convey the interest of a signatory that is not named as grantor in the document with appropriate words of conveyance. *Id.* *1, 2007 Bankr.LEXIS 4651 at *2.

The *Earl* case also involved a similar factual situation as the instant case. In *Earl*, the bankruptcy court held that Debtor Judith Earl's signature at the end of the mortgage did not satisfy the requirements of Ohio law for granting a mortgage on her property because the mortgage defined the term Borrower as Edward Ray Earl in the singular, and only the Borrower granted a mortgage lien on the subject property. *See Earl*, 2010 Bankr.LEXIS 1993, at *7. Therefore, as the *Earl* Court explained, Mrs. Earl's signature at the end of the mortgage did not avail the mortgage holder because there was "no predicate in the language of the mortgage itself in reference to Mrs. Earl." *Id.*

This Court, viewing the contractual language of the Mortgage within the four corners of the document, finds that Mr. Foster is the sole Borrower by virtue of the clear and unambiguous language of the Mortgage. In construing the unambiguous language and terms of the Mortgage, the clear intent of the parties was that Mr. Foster was the sole granter of the mortgage lien. BAC counters that Mrs. Foster is a Borrower on the Mortgage based on the language found in paragraph 13; how-

ever, the Court does not find this argument persuasive. Paragraph 13 of the Mortgage states in pertinent part that:

> "Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a 'co-signer'): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument...."

Use of the term "Borrower" here harkens back to the term as it is defined earlier in the document. The plain definition of "Borrower" is given in the definition section of the Mortgage and means Reese W. Foster. Therefore, BAC's reliance on paragraph 13 is misplaced because Mrs. Foster was not listed as a "Borrower" in the definition section of the Mortgage, nor was she mentioned or identified as one conveying an interest within the body of the Mortgage.

■ While it is true that the *Wallace* and *Earl* cases possess factual predicates similar to this case regarding the Mortgage, the Court does not find them instructive in regards to the Rider. Although the language of the Mortgage is important and would be the determinative document in the absence of the Rider, the Rider is the true lynchpin of this case because it expressly states that it amends and supplements the Mortgage. This language of the Rider is clear and is not susceptible to conflicting interpretations.

The Rider then goes on to alter the definition of the term "Borrower" to "the undersigned." The "undersigned" includes Mrs. Foster, who signed the document. Thus, Mrs. Foster became a "Borrower" by virtue of the Rider language. Trustee, in her Reply, argues that the Rider's definition of "Borrower" refers solely to the individual who conveyed the mortgage to secure that individual's note. The Court disagrees. The Rider does not state "the undersigned Borrower," but rather the Rider redefines the term "Borrower," stating (emphasis added):

> THIS ADJUSTABLE RATE RIDER ... shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by *the undersigned ("Borrower")* to secure Borrower's Adjustable Rate Note to AMERICA'S WHOLESALE LENDER.

The Court interprets this paragraph to mean that the persons signing the Rider are included in the term "Borrower." In the absence of ambiguity, the Court may look no further than the writing itself to discern the intent of the parties. *See CPS Holdings, Inc.,* 115 Ohio St.3d at 308, 875 N.E.2d 31. The Court finds that the language of the document is clear and unambiguous.

■ Here, Mrs. Foster signed and printed her name in the Rider's signature block on a line designated for a "Borrower." The Rider states above the signature block, "... Borrower accepts and agrees to the terms and covenants contained in the Adjustable Rate Rider." Thus, the clear and unambiguous language of the Rider evidences Mrs. Foster's intent to be included as a "Borrower" mortgaging her interest in the Property, because under generally recognized tenets of contract law, it is inferred that she read the Rider and understood its terms before signing the document. *See Kroeger v. Brody,* 130 Ohio St. 559, 200 N.E. 836, 839 (Ohio 1936).

The Court finds that Mrs. Foster is a "Borrower" as described under the terms of the Rider and the Mortgage. Thus, no genuine dispute of material fact remains

regarding BAC's interest in Mrs. Foster's one-half interest in the Property and BAC is entitled to judgment as a matter of law.

### B. The Mortgage and the Rider satisfy the Statute of Frauds.

 In Ohio, an interest in real property can be granted or conveyed only through a written document. The Ohio statute of frauds, as it relates to real property, provides as follows:

> No lease, estate, or interest either of freehold or term of years, or any uncertain interest of, in, or out of lands, tenements, or hereditaments, shall be assigned or granted except by deed, or note in writing, signed by the party assigning or granting it, or his agent thereunto lawfully authorized, by writing, or by act and operation of law.

Ohio Rev.Code § 1335.04. Accordingly, a grant of a mortgage must be in writing. *See Bell v. Dyer*, 26 Ohio Law Abs. 278 (Ohio Ct.App.1937). Furthermore, the Ohio Supreme Court has recognized the "well-settled principle, applicable to the construction of deeds and other instruments, that all their parts are to be construed together...." *Dodd v. Bartholomew*, 44 Ohio St. 171, 5 N.E. 866, 867 (Ohio 1886).

Mrs. Foster's signature on the Rider alone does not satisfy the statute of frauds because it does not serve to convey an interest in the Property; the Mortgage is the instrument that grants the encumbrance on the Property. However, the Mortgage expressly refers to the Rider, and the Rider amends and supplements the Mortgage by its express terms. The Rider redefines the term "Borrower" utilized in the Mortgage. Thus, when construed together, the Mortgage and the Rider define the term "Borrower" to include Mrs. Foster and serve to encumber Mrs. Foster's one-half interest in the Property. Accordingly, the Mortgage and the Rider, when read together, satisfy the statute of frauds.

### IV. Conclusion

This Court finds that there is no genuine dispute of material fact with respect to the grant of a lien on Mrs. Foster's one-half interest in the Property. The Mortgage, through the Rider, encumbers Mrs. Foster's one-half interest in the Property, and BAC is entitled to a judgment as a matter of law.

For the foregoing reasons, the Court **GRANTS** summary judgment in favor of BAC and against Trustee. A separate final judgment will be entered in accordance with the foregoing.

**IT IS SO ORDERED.**