**In re Larry and Mary BARGER, Debtors.**

**Richard D. Nelson, Chapter 7 Trustee, Plaintiff**

v.

**Countrywide Home Loans, Inc., Defendant.**

**Richard D. Nelson, Chapter 7 Trustee, Plaintiff**

v.

**Countrywide Home Loans, Inc., Defendant.**

**Richard D. Nelson, Chapter 7 Trustee, Plaintiff**

v.

**BAC Home Loans Servicing, LP, Defendant.**

Bankruptcy No. 09–12251. Adversary Nos. 10–1178, 10–1179, 10–1180.

United States Bankruptcy Court, S.D. Ohio, Western Division.

July 3, 2012.

746

Gary Allen Billig, Fairfield, OH, for Debtors.

Donald W. Mallory, Richard D. Nelson, Cayce A. Stoneburner, Cincinnati, OH, for Trustee.

## DECISION DENYING MOTIONS FOR SUMMARY JUDGMENT

BETH A. BUCHANAN, Bankruptcy Judge.

The chapter 7 trustee seeks a declaratory judgment finding that the defendants' mortgages do not encumber the debtor-wife's dower interests in three properties owned by the debtor-husband. The chapter 7 trustee maintains that he is entitled to judgment as a matter of law because the debtor-wife is neither obligated on the underlying notes nor is she a "Borrower" (as that term is defined in the mortgages) and, therefore, her dower interests in the properties are not subject to the terms of the

mortgages. Moreover, the chapter 7 trustee contends that the debtor-wife's dower interests in the properties were not effectively released by virtue of her signing the mortgages because there is no express release of her dower interests in the mortgages nor is it clear from the terms of the mortgages that the parties intended for the debtor-wife to relinquish her dower interests in the properties to the defendant-mortgagees.

For the reasons set forth below, this Court concludes that the debtor-wife effectively relinquished her dower interests in the properties to the defendant-mortgagees by joining in the mortgages, the terms of which adequately express the parties' intent to subject the debtor-wife's dower interests in the properties to the terms of the mortgages. Accordingly, the chapter 7 trustees' motions for summary judgment are denied.

## I.  *Background*

Plaintiff, Richard D. Nelson, Chapter 7 Trustee's (the *"Trustee"*) commenced three adversary proceedings seeking a declaration from this Court that certain mortgages held by Countrywide Home Loans, Inc. and BAC Home Loan Servicing, LP (collectively, the *"Defendants"*) do not encumber Debtor Mary Barger's dower interest in three parcels of real estate owned by her husband, Debtor Larry Barger. Although each adversary proceeding involves a difference parcel of real property, the facts of each case are similar and are not in dispute.

On July 20, 2007, Debtor Larry Barger (*"Mr. Barger"*) became the owner of certain real property located at 1830 Huron Avenue, Cincinnati, Ohio. The deed conveying the property to Mr. Barger identifies Mr. Barger as "Larry Barger, married." On that same day, Mr. Barger executed a note in favor of Countrywide Home Loans, Inc. in the amount of $52,500, which note is secured by a mortgage on the Huron Avenue property. On August 22, 2007, Mr. Barger became the owner of certain real property located at 18 Tower Street, Cincinnati, Ohio. The deed conveying the property to Mr. Barger identifies Mr. Barger as "Larry Barger, unmarried." On that same day, Mr. Barger executed a note in favor of Countrywide Bank, FSB (predecessor in interest to Defendant Countrywide Home Loans, Inc.) in the amount of $57,000, which note is secured by a mortgage on the Tower Street property. On August 22, 2007, Mr. Barger also became the owner of certain real property located at 809 Lincoln Avenue # B, Cincinnati, Ohio.[1] The deed conveying the property to Mr. Barger identifies Mr. Barger as "Larry Barger, unmarried." On that same day, Mr. Barger executed a note in favor of Countrywide Bank, FSB (predecessor in interest to Defendant BAC Home Loan Servicing, LP) in the amount of $58,500, which note is secured by a mortgage on the Lincoln Avenue property.[2]

The relevant provisions of each of the Mortgages are the same.[3] Each Mortgage provides that "Borrower does hereby

1. The Lincoln Avenue property, the Huron Avenue property and the Tower Street property are hereafter referred to collectively as the *"Properties."*

2. The two August 22, 2007 notes and the July 20, 2007 note are hereafter referred to collectively as the *"Notes."*

3. The Mortgages appear to be standard mortgage forms as each Mortgage bears the following designation: OHIO–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS (Form 3036 1/01).

mortgage, grant and convey to MERS (solely as nominee of Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property...." Paragraph 13 of each of the Mortgages further provides in relevant part that "any Borrower who co-signs this Security Instrument but does not execute the Note (a 'cosigner'): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument."

Mr. and Mrs. Barger signed each of the Mortgages on the pre-printed "Borrower" signature lines;[4] however, the definitions section of each Mortgage defines only Mr. Barger as the "Borrower." Both Mr. and Mrs. Barger's signatures are acknowledged before a notary who certified the acknowledgment.

Each Mortgage contains a 1–4 Family Rider (the "*Rider*") dated the same date as the respective Mortgages. The terms of the Rider provide that the Rider "is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure the Borrower's Note." The Rider further provides that "BY SIGNING BE-LOW, Borrower accepts and agrees to the terms and covenants contained in this 1–4 Family Rider." Mr. and Mrs. Barger signed the Riders on the pre-printed "Borrower" signature lines.[5]

Mr. Barger's marital status is not stated in the Mortgages, however the parties stipulated at oral argument that Mr. and Mrs. Barger were married at the time of the execution of each of the Mortgages. The parties further agree that Mrs. Barger held a dower interest in the Properties at the time the Mortgages were granted.

The Trustee filed a motion for summary judgment in each of the three adversary proceedings (the "*Motions for Summary Judgment*").[6] The legal issues presented to this Court in the Motions for Summary Judgment are identical. The Trustee maintains that the Mortgages do not encumber Mrs. Barger's dower interests in the Properties because she is not a "Borrower" under the terms of the Mortgages nor is she obligated on the underlying debt. The Trustee further contends that Mrs. Barger's dower interests in the Properties were not effectively released because the Mortgages make no specific reference to release of her dower interests nor is it clear from the terms of the Mortgages that she intended to do so.[7]

**4.** Mr. Barger's name is typewritten under the line for his signature while Mrs. Barger's name is hand-written under the line for her signature.

**5.** Mr. Barger's name is typewritten under the line for his signature while Mrs. Barger's name is hand-written under the line for her signature.

**6.** Adversary No. 10–1178, Docket Number 16; Adversary No. 10–1179 Docket Numbers 16; Adversary No. 10–1180, Docket Number 14.

**7.** The complaint filed in each of the three adversary proceedings is styled as a complaint for determination of the validity of a

lien or avoidance thereof and makes reference to 11 U.S.C. §§ 544(a)(3) and 550(a). The Trustee clarified at oral argument and in his post-argument brief that the Trustee is not seeking to avoid the Mortgages but rather is seeking a determination of the extent of Defendants' liens on the Properties as to Mrs. Barger's dower interest in the Properties. *See* Fed. R. Bankr.P. 7001(9). *Defendants* raise various procedural matters in their post-argument brief relating to priority of the Mortgages vis-à-vis Mrs. Barger's dower interest, whether Mrs. Barger's dower interest is property of the estate and, if so, valuation of Mrs. Barger's dower interest. This Court need not address these procedural issues since this Court is denying the Motions for

The Defendants contend that Mrs. Barger relinquished her dower interests in the Properties pursuant to the terms of the Mortgages. The Defendants maintain that Mrs. Barger is a "Borrower" as such term is used in the Mortgages because the Riders to each of the Mortgages define Mrs. Barger as a "Borrower" and the Riders, by their own terms, amend each Mortgage.[8] The Defendants further contend that Mrs. Barger does not need to specifically release her dower interests in the Mortgages in order to effectively relinquish such rights and that Mrs. Barger's signature alone on the Mortgages is sufficient to subordinate her dower interest to the Defendant mortgagees.

## II. *Jurisdiction*

This Court has subject matter jurisdiction over these adversary proceedings pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference entered in this district. This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(K).

## III. *Legal Analysis*

### A. *Summary Judgment Standard*

The standard for summary judgment is set forth in Rule 56(a) of the Federal Rules of Civil Procedure (the *"Civil Rules"*), made applicable to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure. Civil Rule 56(a) provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(a).[9] "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In reviewing a motion for summary judgment, this Court must view all inferences to be drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Anthony v. BTR Auto. Sealing Sys., Inc.*, 339 F.3d 506, 511 (6th Cir.2003).

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477

---

Summary Judgment for the reasons subsequently set forth in this decision.

**8.** The Defendants initially argued that Mrs. Barger did not need to be defined as a "Borrower" in the Mortgages because she only held a dower interest in the Properties, which interest was sufficiently released by her signature on the Mortgages. This Court need not address this argument in light of this Court's conclusion, as subsequently set forth in this decision, that Mrs. Barger is a "Borrower" as that term is used in the Mortgages.

**9.** Effective December 1, 2010, the summary judgment standard now appears in Civil Rule 56(a) rather than, as it formerly did, in Civil Rule 56(c). *See* Fed.R.Civ.P. 56(a) advisory committee's note (2010 Amendments) ("Sub-

division (a) carries forward the summary-judgment standard expressed in former subdivision (c) . . ."). "Amendments to the Federal Rules of Civil Procedure govern proceedings after the date they are effective in an action then pending unless the Supreme Court specifies otherwise or the court determines that applying them in a particular action would be infeasible or work an injustice." *Martinez v. Hutton (In re Harwell)*, 628 F.3d 1312, 1317 n. 4 (11th Cir.2010). Given that the amendments to Civil Rule 56 did not materially change the summary judgment standard or burdens, this Court cites to the amended rule in this adversary proceeding as doing so "is just and practical and would not work a manifest injustice." *See Farmers Ins. Exch. v. RNK, Inc.*, 632 F.3d 777, 782 n. 4 (1st Cir. 2011).

U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). As such, the summary judgment process should not be regarded "as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* at 321, 106 S.Ct. 2548.

## B. *Legal Principles For Interpreting State Law Issues*

▮ Where the Bankruptcy Code does not directly address the nature, existence or extent of an interest in property, this Court must look to applicable state law to determine the relative property interests of the parties. *See Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) ("Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."); *Drown v. JPMorgan Chase Bank, N.A. (In re Barnhart),* 447 B.R. 551, 555 (Bankr.S.D.Ohio 2011) ("Applicable state law governs the extent of a person's interest in property when the Bankruptcy Code does not directly do so."). In this regard, the substantive law of Ohio governs since the Notes and Mortgages concern real property located in Ohio. *See Simon v. Chase Manhattan Bank (In re Zaptocky),* 250 F.3d 1020, 1024 (6th Cir.2001).

▮ When addressing state law issues, this Court must "apply state law in accordance with the controlling decisions of the state supreme court." *Allstate Ins. Co. v. Thrifty Rent–A–Car Sys.,* 249 F.3d 450, 454 (6th Cir.2001). If the state supreme court has not directly ruled on the particular issue of state law, this Court must predict how the state supreme court would rule if it were faced with the issue. *Hardesty v. The Huntington National Bank (In re Payne),* 450 B.R. 711, 718 (Bankr.S.D.Ohio 2011) (citing *Meridian Mut. Ins. Co. v. Kellman,* 197 F.3d 1178, 1181 (6th Cir.1999)). In doing so, this Court "may consult doctrinal trends embraced by [Ohio's] appellate courts as well as decisions from other jurisdictions." *Id.* (quoting *Rousey v. United States,* 115 F.3d 394, 397 (6th Cir.1997) (internal quotation marks omitted)). When evaluating matters concerning the construction or effect of mortgages, courts may consider analogous precedent in the context of deeds. *See In re Payne,* 450 B.R. at 720 ("[I]f a state's highest court has not already ruled on the issue in the context of a mortgage, it is likely to consider if any analogous precedent exists in the context of a deed.") (quoting *Kindt v. ABN AMRO Mortg. Grp. (In re Wallace),* 2007 Bankr.LEXIS 4651, 2007 WL 6510864, at *1 (Bankr. S.D.Ohio Nov. 15, 2007)).

## C. *Mrs. Barger Is A "Borrower"*

The Trustee seeks a declaration from this Court that the Defendants' Mortgages do not encumber Mrs. Barger's dower interest in the Properties because Mrs. Barger is neither obligated on the underlying Notes nor is she a "Borrower," as defined in the Mortgages.

▮ The parties do not dispute that Mrs. Barger did not sign the Notes and, as a result, is not personally obligated to repay the debts owed to the Defendants. This Court interprets the Trustee's argument relating to Mrs. Barger's lack of liability on the debts to be that Mrs. Barger is not defined as a "Borrower" in the Notes and, as such, the Notes do not aid the Defendants' argument that Mrs. Barger is a "Borrower" for purposes of the Mortgages. To the extent that the Trustee is asserting that Mrs. Barger *could not*

release or otherwise encumber her dower interest in the Properties *simply* because she is not obligated on the Notes, this Court disagrees. It is well established under Ohio law that "a mortgage given to secure the obligation of a third person is valid and enforceable." *Rhiel v. Chase Home Fin. LLC (In re Colbert),* 434 B.R. 844, 847 (Bankr.S.D.Ohio 2010) (citations and internal quotation marks omitted). Consequently, Mrs. Barger's lack of personal liability under the Notes is not, in and of itself, determinative of whether she released or otherwise encumbered her dower interest in the Properties under the Mortgages.

█ In addition to not being a "Borrower" under the Notes, the Trustee contends that Mrs. Barger is not a "Borrower" as defined in the Mortgages. The "Definitions" sections of the Mortgages define Larry Barger as the "Borrower." The Mortgages speak only in terms of the "Borrower" as being the party who is granting or otherwise encumbering an interest in the Properties. Since Mrs. Barger's name is not included in the definition of "Borrower" in the Mortgages, the Trustee asserts that she did not transfer any rights in the Properties by virtue of signing the Mortgages.

In support of this position, the Trustee relies on *Schlarman v. Chase Home Finance, LLC (In re Padgitt),* 2008 Bankr.LEXIS 3063, 2008 WL 4191517 (Bankr.E.D.Ky.2008), *Menninger v. Mortgage Electronic Registration System, Inc. (In re Earl),* 2010 Bankr.LEXIS 1993 (S.D. OH July 2, 2010) and *Hardesty v. The Huntington National Bank (In re Payne),* 450 B.R. 711 (Bankr.S.D.Ohio 2011). In each of these cases, the debtor-wife signed the mortgage but did not sign the note and was not defined as a "Borrower" in the mortgage. These respective courts held that the mortgage at issue did

not encumber the one-half interest of the debtor-wife who was a signatory to the mortgage but was not otherwise referenced in the document. *In re Padgitt,* 2008 Bankr.LEXIS 3063 at *7, 2008 WL 4191517 at *3; *In re Earl,* 2010 Bankr. LEXIS 1993 at *8; *In re Payne,* 450 B.R. at 724; *see also Kindt v. ABN AMRO Mortg. Group (In re Wallace),* 2007 Bankr.LEXIS 4651 at *7, 2007 WL 6510864 at *3 (Bankr.S.D.Ohio 2007) ("[A] mortgage, under Ohio law, does not encumber a spouse's one-half interest in real property if the mortgage, although signed and acknowledged by the spouse, does not otherwise reference the spouse."); *Nelson v. American Home Mortgage Acceptance (In re Sparks),* Adv. No., 2010 WL 9187692 entered March 3, 2010 (Bankr. S.D.Ohio 2010)(following *In re Wallace* ). Accordingly, these courts held that the debtor-wife's interest in the property was not encumbered by the mortgage.

The courts in *Padgitt, Earl* and *Payne,* however, were not asked to consider the position asserted by the Defendants at oral arguments based on the decision in *Rhiel v. BAC Home Loans Servicing, LP (In re Foster),* 448 B.R. 914 (Bankr.S.D.Ohio 2011), *aff'd,* 458 B.R. 391 (6th Cir. BAP 2011). The issue in *Foster* was whether the definition of "Borrower" in a rider to a mortgage modified the definition of "Borrower" set forth in the mortgage itself, such that both debtors' interests in the property were encumbered by the mortgage.

The real estate at issue in *Foster* was jointly owned by the debtors, Mr. and Mrs. Foster. *In re Foster,* 448 B.R. at 919. Both Mr. and Mrs. Foster signed the mortgage but only Mr. Foster signed the promissory note. *Id.* Only Mr. Foster was defined as a "Borrower" in the mortgage. *Id.* The mortgage included an Adjustable Rate Rider, which was also signed by both

Mr. and Mrs. Foster. *Id.* at 919–20. The rider defined "Borrower" as the "undersigned" and provided that the rider was incorporated into and deemed to amend and supplement the mortgage. *Id.* The mortgage similarly provided that "BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it." *Id.* at 920.

Based on these facts, the *Foster* court found:

> Mr. Foster is the sole Borrower by virtue of the clear and unambiguous language of the Mortgage. In construing the unambiguous language and terms of the Mortgage, the clear intent of the parties was that Mr. Foster was the sole granter of the mortgage lien.
>
> * * * *
>
> Although the language of the Mortgage is important and would be the determinative document in the absence of the Rider, the Rider is the true lynchpin of this case because it expressly states that it amends and supplements the Mortgage. This language of the Rider is clear and is not susceptible to conflicting interpretations.
>
> The Rider then goes on to alter the definition of the term "Borrower" to "the undersigned." The "undersigned" includes Mrs. Foster, who signed the document. Thus, Mrs. Foster became a "Borrower" by virtue of the Rider language.

*Id.* at 920–921. Accordingly, the *Foster* court held that Mrs. Foster's one-half interest in the property was also encumbered by the mortgage and the lender was entitled to judgment as a matter of law. *Id.* at 922. On appeal, the Bankruptcy Appellate Panel affirmed. *In re Foster,* 458 B.R. at 392; *see also Rogan v. Fifth Third Mortgage Company (In re Rowe),*

452 B.R. 591 (6th Cir. BAP 2011) (reaching the same conclusion under Kentucky law).

As was the case in *Foster,* the Mortgages in these cases likewise have Riders that define "Borrower" as the "undersigned" and provide that the Riders are incorporated into and are deemed to amend and supplement the Mortgages. The Mortgages similarly provide that by signing the Mortgages, Borrower accepts and agrees to the terms and covenants contained in the Mortgages and in any Rider executed by Borrower and recorded with the Mortgage. Mrs. Barger signed each of the Riders above the signature line for "Borrower" and also signed the Mortgages. The Riders were recorded with the Mortgages. Accordingly, the language of the Mortgages and Riders clearly and unambiguously provide that Mrs. Barger is a "Borrower" and is bound by the terms of Mortgages and Riders. *In re Foster,* 448 B.R. at 921.

### D. Mrs. Barger Released Her Dower Rights In The Properties As To The Defendants

The Trustee further contends that Mrs. Barger's dower interests in the Properties were not effectively released by virtue of her signing the Mortgages because the Mortgages do not expressly provide that Mrs. Barger released her dower interest and because it is not clear from the Mortgages as to the parties' intent in having Mrs. Barger sign the Mortgages. Accordingly, the Trustee argues that he is entitled to a declaratory judgment finding that the Mortgages do not affect Mrs. Barger's dower interests in the Properties as a matter of law.

### 1. A Specific Release Of Dower In The Mortgages Is Not Required

At common law, "dower" is the legal right or interest that a wife acquires

in real estate of which her husband was legally seized during their marriage. 25 Am. Jur. 2d *Dower and Curtesy* §§ 1 and 10 (2012). Dower is intended to ensure that a wife will not be left disinherited or destitute upon the death of her husband. *Id.* at § 3. Ohio is one of the few states that still recognize dower interests. *In re Rosario,* 402 B.R. 223, 227 (Bankr. N.D.Ohio 2009). Courts have observed that dower "has been a bane to real estate professionals, lenders, and first-year law students for eons. It is a dour subject." *Standard Federal Bank v. Staff,* 168 Ohio App.3d 14, 20, 857 N.E.2d 1245 (2006); *Ferraro v. Cristiano,* 2009 Ohio App. LEXIS 4050 at *23 n. 3, 2009 WL 2915617 at *9 n. 3 (Ohio Ct.App. Sept. 11, 2009)(quoting *Staff* and adding "And, we would add, to experienced attorneys and judges.").

In Ohio, a dower interest is defined as "an estate for life [of one spouse] in one third of the real property of which the [other spouse] was seized as an estate of inheritance at any time during the marriage," provided that a spouse has not relinquished or been barred from his or her dower interest. Ohio Rev.Code Ann. § 2103.02 (2012); *see also Staff,* 168 Ohio App.3d at 20, 857 N.E.2d 1245 ("In other words, either spouse is entitled to a one-third dower interest in real property unless it has been relinquished or barred."). Notwithstanding various statutory reenactments, "Ohio's codification of dower interests has not substantially changed in more than 100 years." *Ferraro,* 2009 Ohio

App. LEXIS 4050 at *24, 2009 WL 2915617 at *9; *In re Estate of French,* 2011 Ohio App. LEXIS 342 at *4–5, 2011 WL 334673 at *2 (Ohio Ct.App., Jan. 24, 2011) (citing *Ferraro* ); *Staff,* 168 Ohio App.3d at 20, 857 N.E.2d 1245 ("The present language—including the eccentric word 'consort' for spouse—has remained unchanged for at least 107 years."); *Stand Energy Corp. v. Epler,* 163 Ohio App.3d 354, 359, 837 N.E.2d 1229 (2005) ("Although *Mandel* [*v. McClave,* 46 Ohio St. 407, 22 N.E. 290 (Ohio 1889) ] was decided over a century ago, the language of the dower statute in 1889 was sufficiently similar to today's statute that *Mandel* remains controlling law.").

■■■ While the Ohio dower statute contemplates that a dower interest may be relinquished,[10] it does not prescribe the specific manner in which to do so. The Trustee maintains that a dower interest must be specifically released. In this regard, the Trustee notes that the Mortgages do not contain any language expressly referring to "dower" or to Mrs. Barger's release of dower. The Trustee relies on two Ohio appellate court decisions—*Ogan v. Ogan,* 122 Ohio App.3d 580, 702 N.E.2d 472 (1997) and *State ex rel. Miller v. Private Dancer,* 83 Ohio App.3d 27, 613 N.E.2d 1066 (1992)—in support of his position that a mortgage must contain a specific release of dower to be effective. This Court finds that the cases cited by the Trustee are not conclusive on the issue before this Court.

---

**10.** *See* Ohio Rev.Code Ann. § 2103.02 (2012) ("A *spouse who has not relinquished* or been barred from it shall be endowed of an estate for life in one third of the real property of [his or her] consort ... Such dower interest shall terminate upon the death of the consort except: (A) [t]o the extent that any such real property was conveyed by the deceased consort during the marriage, the surviving *spouse*

*not having relinquished* or been barred from dower ... [or] (B) [t]o the extent that any such real property during the marriage was encumbered by the deceased consort by mortgage, judgment, lien, except tax lien, or otherwise or aliened by involuntary sale, the surviving *spouse not having relinquished* or been barred from dower ...").

*Ogan* and *Private Dancer* are distinguishable from the present case in that the mortgagee was not even a party to the action in either *Ogan* or *Private Dancer*. *Ogan* involved a dispute between a surviving spouse and her late husband's estate over a claim by the surviving spouse against the estate for reimbursement of amounts she paid to satisfy an obligation of her late husband that was secured by a mortgage against property in which the surviving spouse held a dower interest at the time she executed the mortgage. *Ogan*, 122 Ohio App.3d at 582–83, 702 N.E.2d 472. *Private Dancer* was an action brought by a county prosecutor against multiple parties, including the owner of certain real property and his spouse who held a dower interest in the property, alleging that lewdness, assignation or prostitution were being conducted on the premises and seeking to have the property declared a public nuisance. While the subject of dower interests was relevant to the outcome in each case, the relationship between dower rights and the respective interests of parties to a mortgage loan transaction was not the focal point of the arguments presented to these respective courts or of the decisions that the courts ultimately rendered.

*Ogan* centered on whether a surviving spouse was entitled to a claim against her late husband's estate for amounts she paid to satisfy an obligation of her late husband. *Ogan*, 122 Ohio App.3d at 583, 702 N.E.2d 472. Specifically, Mr. Ogan signed a note and mortgage giving the lender a security interest in a parcel of property owned by Mr. Ogan. *Id.* at 582, 702 N.E.2d 472. Mrs. Ogan, who was married to Mr. Ogan at such time, also signed the mortgage but not the note. *Id.* A few days after the note and mortgage were signed, Mr. Ogan

conveyed his interest in the property to himself and Mrs. Ogan through a survivorship deed "for their joint lives, remainder to the survivor of them." *Id.* After Mr. Ogan died, Mrs. Ogan continued to make monthly payments on the note and subsequently sold the property and paid the note in full. *Id.* at 583, 702 N.E.2d 472.

Mrs. Ogan claimed that she was entitled to be reimbursed by her late husband's estate for the amounts she tendered in satisfaction of the note based on the Ohio Supreme Court's decision in *Pietro v. Leonetti*, 30 Ohio St.2d 178, 283 N.E.2d 172 (1972), which held that:

> A surviving spouse, who owned real property with her husband as a joint tenant with the right of survivorship, is entitled to receive contribution from her husband's estate where she has since sold the property and discharged all liability on a joint and several mortgage note which had been signed by both herself and the decedent.

*Id.* (syllabus).

In holding that Mrs. Ogan did not have a claim against the estate based on *Pietro*,[11] the court concentrated on the following provision in the mortgage, which addressed the obligations of parties to the mortgage who were not also signers on the note (the "*co-signer provision*"):

> Any Borrower who co-signs this [mortgage] but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this [mortgage]; (b) is not personally obligated to pay the sums secured by this [mortgage] * * *.

*Id.* at 585.

The court found that the terms of the mortgage expressly stated that a party,

---

11. The court ultimately found that Mrs. Ogan was entitled to a claim against her late husband's estate; not based on *Pietro*, but rather because she was subrogated to the rights of the lender having satisfied the lender's claim. *Id.* at 586, 702 N.E.2d 472.

such as Mrs. Ogan, who signed the mortgage but not the note was not personally obligated to pay the sums secured by the mortgage. *Id.* at 585. Noting that Mrs. Ogan held only a dower interest in the property at the time the mortgage was signed, the court also found that Mrs. Ogan had no obligation to convey anything to the bank based on her dower interest because there was no specific release of her dower interest in the mortgage or in the record.[12] *Id.*

The court in *Ogan* clearly was focused on the issue of whether Mrs. Ogan had *an obligation to pay a debt* of her late husband. *Id.* at 584 and 586 n. 1, 702 N.E.2d 472, ("[I]n order for [the surviving spouse] to have a claim [for contribution], [the surviving spouse] must have had *an obligation to pay the debt* on the note. . . . In the present case, [the surviving spouse] did not have *an obligation to pay the bank* according to the note or the [mortgage]." (emphasis added)). The court only touched briefly on the subject of the requirements for release of dower interest, citing only to *Private Dancer* for the court's supposition that a dower interest must be specifically released.

The dower issue in *Private Dancer* centered on whether defendant Sharon Wolfe was an owner of the property, within the meaning of Ohio Revised Code section 3767.02 (the *"nuisance statute"*), that was the subject of the nuisance action such that she was a proper party to the complaint brought by the county prosecutor to enjoin the performance of lap dancing on the premises. *Private Dancer,* 83 Ohio App.3d at 30, 613 N.E.2d 1066. The deed for the property in question was titled solely in Mrs. Wolfe's husband's name. *Id.* Mrs. Wolfe argued that the only interest she had in the property was an inchoate right of dower, which would not vest until the death of her husband—presumably suggesting that an inchoate right of dower did not make her an owner of the property within the meaning of the nuisance statute. *Id.* Citing the Ohio Supreme Court's decision in *Jewett v. Feldheiser,* 68 Ohio St. 523, 67 N.E. 1072 (1903), the court noted that the inchoate right of dower was an interest in property. *Id.* The court continued to state, without further citation or discussion, that a "[dower] interest arises when property is purchased during a marriage and continues unless the interest is specifically released. . . . Such a release must be done in writing and recorded." *Id.* Finding no evidence that Mrs. Wolfe specifically released her dower interest in the property in question, the court affirmed the trial court's denial of Mrs. Wolfe's motion to dismiss. *Id.*

As with *Ogan,* there was very limited discussion or analysis in *Private Dancer* on the subject of release of dower interests. Moreover, other courts have reached the opposite conclusion as the court in *Ogan* in finding that a non-title holding spouse may effectively relinquish his or her dower interest in property to a mortgagee without specific reference to release of dower merely by being a party to the

---

**12.** In construing the co-signer provision of the mortgage in *Ogan* (which is similar to the co-signer provision in these cases), it is notable that the *Ogan* court found that Mrs. Ogan was not a "Borrower" as that term was defined in the mortgage. *Id.* at 582, 702 N.E.2d 472 ("[Mr. and Mrs. Ogan's] names are both typed on the "Borrower" line, but according to the terms of the security instrument, the definition of "Borrower" excludes [Mrs. Ogan] as a borrower, as will be more fully discussed later in this opinion."). As previously discussed, this Court finds that Mrs. Barger is a "Borrower" as that term is used in the Mortgages based on the facts of these cases, which further distinguishes these cases from the decision in *Ogan.*

mortgage. Interpreting an earlier version of the Ohio dower statute, the Ohio Supreme Court in *Smith v. Handy* found that "[a]ll that the statute requires of a married woman in order to convey her own estate, or her dower interest, is that she join with her husband in the [mortgage] deed." 16 Ohio 191, 232 (Ohio 1847). The Ohio Supreme Court noted that a release of dower may not be effective where the dower-holding spouse merely executes the mortgage deed, *id.* at 233, but specifically held where "a married woman unite[s] with her husband in the granting part of a [mortgage] deed conveying his land, she is thereby barred of her right of dower, as against all those who claim under such [mortgage] deed." *Id.* (syllabus).

More recently, one Ohio court of appeals likewise concluded (albeit discussing a different substantive issue) that a non-title holding spouse effectively released his dower interest in the subject property to the lender by signing a mortgage that included a co-signer provision similar to the co-signer provision in *Ogan* (which provision is likewise similar to the co-signer provisions applicable in the instant cases). *Standard Federal Bank v. Staff*, 168 Ohio App.3d 14, 17–18, 24, 857 N.E.2d 1245 (Ohio Ct.App.2006). Other courts have similarly acknowledged the common practice of a non-title holding spouse executing a mortgage for the purpose of relinquishing his or her dower interest for the benefit of the mortgage lender. *See Mandel v. McClave*, 46 Ohio St. 407, 412–13, 22 N.E. 290 (Ohio 1889) ("There is nothing in the nature of the transaction from which it can be inferred that a wife, by joining with her husband in a mortgage of his lands to secure his debt, intends more than to pledge her contingent right of dower for that particular debt ... It being established that the contingent right of the wife to dower in her husband's real estate is property, the value of which can be ascer-

tained by the aid of fixed principles, and that her release of it by joining with her husband in a mortgage to secure his debt does not, by reason of any technical rule of law, inure to the benefit of a stranger to the instrument ..."); *In re Rosario*, 402 B.R. at 229 ("Quite often, however, when a mortgage is executed by a married person, the non-title holding spouse also signs the mortgage. That signature operates to subordinate the dower interest for the benefit of the creditor lending money, but not as to all creditors."); *Deutsche Bank Trust Co. Ams. v. Smith*, 2008 Ohio App. LEXIS 2352 at *13–14, 2008 WL 2349289 at *5 (Ohio Ct.App. June 9, 2008) ("Given [the wife] was married to [the husband] at time of the execution of the mortgage, and [the husband] did not join in the execution of the mortgage, the mortgage is subject to the dower interest of [the husband]."); *see also In re Reynolds' Estate*, 90 Utah 415, 62 P.2d 270, 272 (1936) ("Has the wife by joining in the mortgage relinquished all rights in that property? We think she has only done so in reference to the mortgagee and not for the benefit of the other heirs, the general creditors or tax creditors."); *Oades v. Std. S & L Ass'n*, 257 Mich. 469, 241 N.W. 262, 263–64 (1932) ("Execution by a wife of her husband's mortgage of his land does not bar her right of dower in States, as ours, in which the mortgage does not convey legal title. It merely subjects the right to the mortgage lien. . . . These authorities sustain the proposition—which seems beyond the necessity of argument—that, in executing a mortgage of land belonging to the husband, the wife gives a lien on her contingent estate of dower and is a mortgagor.").

The concept of release of dower by joining with the title-holding spouse in an instrument conveying an interest in real property carries over in the context of deeds as well. Where a title-holding

spouse conveys property by deed in which his or her spouse holds only a dower interest, "if [the name of the spouse holding only a dower interest] appears in the granting clause along with the other spouse and [the spouse holding only a dower interest] joins in the execution of the deed, the execution is sufficient to release [the] dower interest." *Ohio Real Property Law and Practice*, § 6.09, Title Issues—Conveyances (Matthew Bender & Company, Inc. eds., 2010) (citing *Smith v. Handy*, 16 Ohio at 229–30; *Whitt v. Whitt*, 2003 Ohio App. LEXIS 2743, 2003 WL 21384590 (Ohio Ct.App., June 13, 2003)). Accordingly, there is case law that supports the position that a deed or mortgage is an appropriate means by which dower interests may be relinquished without a specific reference to the release of dower provided that the non-titled holding spouse is a party to the deed or mortgage and the deed or mortgage is properly executed.

Moreover, nothing under Ohio statutory law relating to deeds or mortgages suggests that a specific release of dower within a deed or a mortgage is required to effectively release such interest. The only express statutory requirements under Ohio law relating to mortgages of any interest in real property of a married person is that the mortgage must be "signed, acknowledged, and certified as provided in section 5301.01 of the Revised Code" to be effective. Ohio Rev.Code Ann. § 5301.04 (2012). Indeed, Ohio statutory law suggests that a specific release of dower is not required. In particular, Ohio Revised Code Section 5301.02 provides in pertinent part that "every grant, conveyance, or mortgage of lands, tenements, or hereditaments shall convey or mortgage the entire interest which the grantor could lawfully grant, convey, or mortgage, *unless it clearly appears by the deed, mortgage, or instrument that the grantor intended to convey or mortgage a less estate.*" Ohio Rev.Code Ann. § 5301.02 (2012) (emphasis added). Ohio Revised Code Section 5302.04 similarly provides that "[i]n a conveyance of real estate or any interest therein, all rights, easements, privileges, and appurtenances belonging to the granted estate shall be included in the conveyance, *unless the contrary is stated in the deed,* and it is unnecessary to enumerate or mention them either generally or specifically." Ohio Rev.Code Ann. § 5302.04 (2012) (emphasis added). Finally, Ohio Revised Code Section 5301.071(A) provides that "[n]o instrument conveying real property, or any interest in real property ... shall be considered defective nor shall the validity of that conveyance be affected because ... [t]he dower interest of the spouse of any grantor was not specifically released, but that spouse executed the instrument in the manner provided in section 5301.01 of the Revised Code." Ohio Rev.Code Ann. § 5301.071(A) (2012).[13]

---

**13.** The parties disagree as to whether Ohio Revised Code Section 5301.071(A) applies to mortgages or only to deeds. The parties do not cite nor has this Court found any cases addressing the application of Ohio Revised Code Section 5301.071(A) in any context. At least one treatise suggests that Ohio Revised Code Section 5301.071(A) applies to deeds, mortgages, leases and land contracts. *See* Kenton L. Kuehnle and Jack S. Levey, *Dower—Relinquishment, Forfeiture, Assignment and Waste,* Baldwin's Ohio Practice Ohio Real Estate Law § 3.22 (West 2011)("An inchoate claim of dower can be waived by the consort, of the instrument of conveyance or encumbrance (deed, mortgage, lease, land contract). The requirement that a consort specifically relinquish dower has been abolished provided execution of the instrument is in compliance with RC 5301.01" (citing Ohio Revised Code Section 5301.071)). Regardless of its application, for the reasons subsequently stated, this Court concludes that no specific reference to "dower" in a mortgage is required to relinquish a dower interest in favor of the mortgagee. Accordingly, this Court need not address whether Ohio Revised Code Section

In summary, the cases cited by Trustee, *Ogan* and *Private Dancer,* are distinguishable in that the mortgagee was not even a party to the action and both decisions included limited discussion and foundation for the proposition that a specific reference to dower is required in a mortgage to effectively release a dower interest as to the mortgagee. In addition, there is case law that holds to the contrary. Moreover, there is no express statutory requirement for the specific release of dower interests. In fact, the statutory framework seems to favor a broad conveyance of rights in real property unless otherwise expressly indicated. For these reasons, this Court believes that the Ohio Supreme Court if faced with this issue would conclude that where a mortgage is properly signed, acknowledged and certified as provided in Ohio Revised Code Section 5301.01, no specific reference to "dower" in a mortgage is required to relinquish a dower interest in favor of the mortgagee, provided that it is otherwise apparent from the terms of the mortgage that the non-title holding spouse's interests in the property are intended to be subject to the mortgage.

## 2. Mrs. Barger Effectively Relinquished Her Dower Interests In The Properties Pursuant To The Terms Of The Mortgages

The Trustee further maintains that Mrs. Barger did not effectively relinquish her dower interests in the Properties because her intent to do so is not clear from the Mortgages. The Trustee notes that the Mortgages are silent as to Mrs. Barger's identity. He further points out that the Mortgages do not list any marital status for Mr. Barger and two of the three deeds identify Mr. Barger as "unmarried." The Trustee also observes that Mr. Barger's name is type-written under his signature

line on the Mortgages while Mrs. Barger's name is hand-written under her signature. Based on these facts, the Trustee concludes that Mrs. Barger's release of her dower interests cannot be inferred from the language used in the Mortgages.

■■■■■ A mortgage is a written contract between the mortgagor and mortgagee that must be interpreted according to Ohio contract law. *See Menninger v. Accredited Home Lenders (In re Morgeson),* 371 B.R. 798, 804 (6th Cir. BAP 2007). When interpreting a written contract under Ohio law, the court's principal goal is to determine and give effect to the parties' intention, which is presumed to be manifest by the language the parties chose to use in the contract itself. *See Rosepark Props., Ltd. v. Buess,* 167 Ohio App.3d 366, 375, 2006 Ohio 3109, 855 N.E.2d 140 (Ohio Ct.App.2006) (citations omitted); *Kelly v. Med. Life, Inc. Co.,* 31 Ohio St.3d 130, 31 O.B.R. 289, 509 N.E.2d 411, syllabus P 1 (1987); *In re Jared,* 474 B.R. 521, 524–525 (Bankr.S.D.Ohio 2011) (citing *Westfield Ins. Co. v. Galatis,* 100 Ohio St.3d 216, 219, 797 N.E.2d 1256 (2003)). "Contract language is ambiguous if it is unclear, indefinite, and reasonably subject to dual interpretations." *Scarberry v. Lawless,* 2010 Ohio App. LEXIS 2879 at *17, 2010 WL 2838531 at *24 (Ohio Ct.App. July 15, 2010) (internal citations omitted).

■■■■ Looking to the language in the Mortgages between Mr. and Mrs. Barger and the Defendants, this Court finds that the language of the Mortgages unambiguously evidences the parties' intent to subject Mrs. Barger's interests in the Properties to the terms of the Mortgages. For the reasons previously discussed, Mrs. Barger is a "Borrower" as that term is used in the Mortgages. Paragraph 13 of each of the Mortgages provides in relevant part that "any Borrower who co-signs this

5301.071(A) applies to mortgages for purposes of this decision.

Security Instrument but does not execute the Note (a 'co-signer'): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument." The parties do not dispute that Mrs. Barger did not sign the Notes. As such, Mrs. Barger is a "co-signer" as that term is used in the Mortgages. As a co-signer, Mrs. Barger agreed to subject her interests in the Properties—whatever interests those may be—to the terms of the Mortgages. As the Ohio Supreme Court stated in *Smith v. Handy:*

> But it is said that there is nothing to show that the female intended to release her right of dower. If she did not intend this, what did she intend? She had no other interest in the property than a contingent right of dower? Why did she join in the [mortgage] deed? Was it a vain thing? She must have intended that the [mortgage] deed should operate for some purpose, and, so far as she was concerned, it would be entirely inoperative, unless it operated upon her right of dower.

16 Ohio at 232.

The parties further do not dispute that Mrs. Barger signed the Mortgages and that her signature was properly acknowledged and certified by a notary public as required by Ohio Revised Code Section 5301.01. By statute, Mrs. Barger is deemed to have executed the Mortgages for the purposes stated in the Mortgages. Ohio Rev.Code Ann. § 147.541 (2012) ("The words 'acknowledged before me' means that: ... in the case of ... [a] natural person, he executed the instrument for the purposes therein stated."). "By joining in the words of grant, she must be understood to give, or intend to give, all the right and title she was capable of giving, whether by way of passing an estate or extinguishing or barring a right depending on a contingency." *Smith v.*

*Handy,* 16 Ohio at 236 (internal citations and quotation marks omitted); *see also* Ohio Rev.Code Ann. § 5301.02.

The Trustee cites no authority for the proposition that failure to state a party's marital status in the mortgage nullifies the encumbrance of such party's interest in the mortgaged property. The Trustee is not contending that Mr. Barger's interest in the Properties is not encumbered by the Mortgages because Mr. Barger's marital status is not disclosed. This Court sees no reason why a different standard should be applied to Mrs. Barger's interest in the Properties. Accordingly, this Court finds that Mrs. Barger effectively relinquished her dower interests in the Properties based on the language of the Mortgages.

## IV. *Conclusion*

For the foregoing reasons, the Motions for Summary Judgment are hereby DENIED.

**IT IS SO ORDERED.**