IN RE: Vodrick Lee PERRY, Marcy Lynn Perry, Debtors.

Susan L. Rhiel, Trustee, Plaintiff,

v.

The Bank of New York Mellon, et. al, Defendants.

Case No. 14-56316

Adv. Pro. No. 14-2312

United States Bankruptcy Court, S.D. Ohio, Eastern Division.

Signed September 20, 2016

Susan L Rhiel, Lead Attorney, Kristin Radwanick, Rhiel & Associates Co., LPA, Columbus, OH, for Plaintiff.

Amelia A Bower, David A Wallace, Columbus, OH, for Defendants.

Nationstar Mortgage, LLC, Lewisville, TX, pro se.

## MEMORANDUM OPINION AND ORDER ON CHAPTER 7 TRUSTEE SUSAN RHIEL'S COMPLAINT FOR DECLARATORY JUDGMENT AGAINST DEFENDANTS THE BANK OF NEW YORK MELLON, *ET. AL* (DOC. NO. 1)

CHARLES M. CALDWELL, Judge

Vodrick Lee and Marcy Lynn Perry (Debtors) filed bankruptcy under Chapter 7 of the United States Bankruptcy Code (Code) on September 5, 2014. The docket case caption for Mr. Perry includes five former business entities: (1) Miller Foster Home Property Management Corporation; (2) Miller Foster Home Care Center, LLC; (3) Rivers Crossing Home Health, LLC; (4) Miller Foster Supportive Living Center, LLC; and (5) Miller Foster Home Adult Day Care, LLC. According to the Statement of Financial Affairs these five businesses provided health services for disabled adults, and related property management. Debtors scheduled $517,900.00 in real property, and $108,929.86 in personal property. For liabilities, Debtors listed $457,072.69 in secured claims, $53,914.63 for unsecured priority creditors, and $507,220.33 in general unsecured claims. Combined, the Debtors scheduled total assets of $626,829.86 and total debts of $1,018,207.65. Both Debtors were employed outside the home on the date of filing.

On Schedule A-Real Property, Debtors listed that they jointly owned their former residence, 8253 Rodebaugh Rd., Reynoldsburg, Ohio, 43068 (Property). In addition, they disclosed that Mr. Perry separately owned in his own name four rental properties: (1) 6367 Brauning Drive, Reynoldsburg, Ohio; (2) 2349-2351 McGuffey Road, Columbus, Ohio; (3) 2343-2345 McGuffey Road, Columbus, Ohio; and (4) 486 Hanley Street, Columbus, Ohio.

The Chapter 7 Trustee, Susan L. Rhiel (Plaintiff) filed the present Complaint for Declaratory Judgment on November 17, 2014, and the Bank of New York Mellon (Defendant) answered on December 17, 2014. On April 30, 2015, the parties filed competing Motions for Summary Judgment. The Court denied both Motions on August 25, 2015, finding that the mortgages were ambiguous, and therefore, neither party was entitled to summary judgment.

In order to take evidence on these ambiguities, the Court set a trial for March 18, 2016.

In the present litigation, Plaintiff requests a determination that a refinanced mortgage held by Defendant on the Property, through assignment from the original lender, only encumbers Mr. Perry's one-half interest. As an aside, Nationstar Mortgage, LLC (Nationstar), which held a second mortgage originating from the same refinance, had a default judgement entered against it on March 2, 2015, and will be discussed on a limited basis.

Specifically, Plaintiff asserts that when the Debtors refinanced the Property on February 6, 2007, Mrs. Perry did not sign the Promissory Note now held by the Defendant. In addition, Plaintiff argues that although Mrs. Perry signed the related mortgage (First Mortgage), only Mr. Perry is identified as a "Borrower" in Paragraph (B) on the first page of that document. On these bases, Plaintiff theorizes that nine years ago Mrs. Perry only signed the First Mortgage to "release her dower interest," and as a consequence Mrs. Perry's one-half interest is now free of Defendant's lien. This would allow Plaintiff to distribute Defendant's former loan proceeds to creditors who bore no lending risk, all after deducting the statutory trustee fee and compensation for Plaintiff's Counsel. 11 U.S.C. §§ 326(a), 503(b), 507(a)(1)(C), and 363(f) and (h).

The Court has reviewed the parties' legal arguments, relevant case law, documents received into evidence, and testimony. On these bases, the Court concludes that Mrs. Perry's one-half interest, and therefore the entire Property, is encumbered by Defendant's First Mortgage. The Court's findings of fact and conclusions of law follow.

The Debtors originally purchased the Property from Trinity Home Builders, Inc., and were issued a general warranty deed, with joint survivorship rights, on January 24, 2005. The Deed in both the Debtors' names was recorded on April 11, 2005. In order to purchase the Property, the Debtors jointly took out a mortgage on March 23, 2005, for $238,700.00 in favor of Developer's Mortgage Company. This initial Mortgage listed both Debtors as borrowers. Each Debtor signed the Mortgage as a borrower, and each Debtor initialed every page. The Debtors' deposition testimony presented at the trial before this Court, confirmed what was clear by the closing documents—that in 2005 they purchased and mortgaged the Property together, in every respect.

This clarity was lost, however, in early 2007, when the Debtors refinanced the Property. First, on January 22, 2007, Mr. Perry applied for a loan through a broker, Colonial Mortgage, Inc. (Colonial). Mr. Perry was listed as the sole borrower on the Loan Application. It bore only his initials on each page, in addition to only his signature at the end. Only Mr. Perry's employment information was included. On the other hand, Mr. Perry disclosed on the Loan Application that he was married, and requested a loan for the full value of the Property, including Mrs. Perry's one-half interest. Mr. Perry testified that he sought the refinancing to obtain a fixed interest rate to avoid a looming variable rate adjustment, and in order to pay off a second mortgage. Further, Mr. Perry testified that he did not include Mrs. Perry on the Loan Application, because his income was sufficient to obtain the refinance on his own.

On January 27, 2007, Colonial valued the Property at $314,000.00. For the refinance Colonial found America's Wholesale Lender (AWL). Like the Application Mr. Perry submitted to Colonial, the Loan Approval issued by AWL only refers to Mr. Perry.

Again, however, the AWL Approval does not reference that Mr. Perry only owns a one-half interest, or was attempting to refinance the mortgage on only his half of the Property.

On February 6, 2007, the Debtors refinanced with not just one, but two new mortgages in favor of AWL. The First Mortgage was for $244,800.00, and it was subsequently assigned to Defendant. The second refinanced mortgage was for $61,200.00, and it was subsequently assigned to Nationstar. The Plaintiff contends, however, that in the process of the refinance Mr. Perry became solely obligated on the refinanced mortgages and notes, and that as a result AWL loaned $306,000.00 in exchange for a lien on only Mr. Perry's one-half interest. On its face, such a gratuitous gesture seems far afield from logic, common sense judgment, and reason. Yet, in support, Plaintiff points to the closing documents executed on February 6, 2007. Since the Court has entered a default judgment against Nationstar, only the First Mortgage of Defendant is addressed in this opinion.

■ To start, the Promissory Note for the First Mortgage was initialed and signed by Mr. Perry alone—there was no mention of Mrs. Perry. It did reference as additional payment protection; however, the simultaneous execution of the First Mortgage, and indeed it is on that Document and related forms, where Mrs. Perry's involvement is confirmed by the following six factors.

— First, while only Mr. Perry was listed as a "Borrower" in Paragraph (B) on Page One of the First Mortgage, Mrs. Perry's initials appear on each of the seventeen pages, alongside those of her husband. In fact, the Seventeenth Page contains the legal description of the Property with both of their initials.

— Second, on Page Fifteen of the First Mortgage, Mrs. Perry's signature appears right below Mr. Perry's. Specifically, that page bears Mr. Perry's signature above his name in typed print as a "Borrower". In addition, Page Fifteen displays Mrs. Perry's signature above her name in handwritten print as a "Borrower".

— Third, on Page Three of the First Mortgage under the heading "Transfer of Rights in the Property", it expressly provides that to secure repayment the "Borrower" mortgages property as described on Page Seventeen. This Page includes the legal description of the Property. Consequently, there is no declaration that the security is limited to only Mr. Perry's one-half interest.

— Fourth, Paragraph Thirteen of the refinanced First Mortgage provides: "Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a 'co-signer'): (a) is co-signing this Security instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent."

— Fifth, nowhere in the First Mortgage is there any mention that Mrs. Perry is only signing to release a

"dower interest", as charged by Plaintiff nine years later. On that very point, throughout Mrs. Perry's testimony she often referred to the term "dowry" rights when questioned on whether she signed the First Mortgage as a "Borrower," or only "to release her 'dower' rights." "Dower" rights in Ohio are defined as, "when only one spouse takes title to a property during marriage, the right of dower grants the non-title holding spouse a one-third life-estate interest in the property, unless the interest has been relinquished or barred." *Gen. Elec. Credit Union v. Medow*, 54 N.E.3d 1281, 1283 (Ohio 1st App. Dist., June 3, 2016) citing Ohio Revised Code Section 2103.401. On the other hand, "Dowry" is an archaic term that refers to, "money, goods, or property that a woman brings to her husband in marriage." Black's Law Dictionary, Tenth Edition (2014). Though similar sounding, "dowry" and "dower" are distinct, and totally unrelated concepts. However, Mrs. Perry conflated and confused the terms.

— Sixth, the 2007 refinance also included the issuance and execution of a Truth in Lending Disclosure (Disclosure), Notice of Right to Cancel (Notice) and Department of Housing and Urban Development Settlement Statement (HUD-1). Page One of the Disclosure only lists Mr. Perry's name by the term "Borrowers." However, the bottom of Page One bears Mr. Perry's signature and typed name as a "Borrower", along with the signature and hand-written name of Mrs. Perry as a "Borrower." In addition, Page Two of the Disclosure bears the initials of both Mr. and Mrs. Perry.

Regarding the Notice, at the top it lists only Mr. Perry by the term "Borrower." However, the bottom of the Notice bears the signature and typed name of Mr. Perry as a "Borrower/Owner," and Mrs. Perry's signature and hand-written name as a "Borrower/Owner." Finally, the HUD-1 only bears Mr. Perry's signature and typed name under the term "Borrowers." As was true for the refinanced First Mortgage executed on February 6, 2007, the Disclosure, Notice and HUD-1 all bear no indication that the loan is only secured by Mr. Perry's one-half interest in the Property.

Adding even further confusion to these events, Mrs. Perry signed two, conflicting affidavits as to her intent. As should be expected, Mrs. Perry's two versions of the same event substantially damage her credibility. In the First Affidavit, prepared by Counsel for the Defendant, and executed on October 16, 2015, Mrs. Perry swore: "When I signed the [First Mortgage] ... for $244,800.00 I intended to mortgage my interest in [the Property] ..." Further, on that same date she swore: "I was aware, when I signed the [First Mortgage] ... that [the Property] ... was security for the Note that was signed by Vodrick L. Perry including my interest in ... [the Property]."

However, two months later on December 31, 2015, Mrs. Perry signed a Second Affidavit. It provided greater detail, but is most notable for its conflict with the prior sworn statement. This time around Counsel for the Plaintiff prepared the affidavit. The document posits an explanation for why the Debtors refinanced their jointly owned home with only Mr. Perry's name on the Loan Application and Promissory Note. On this point, the Second Affidavit suggests: "In 2007, we decided to refinance the Property. Although I was employed at that time, Vodrick was earning sufficient

income to qualify for a refinance loan in his name only and he proceeded to apply for such a loan in his name only."

Next, the Second Affidavit provides Mrs. Perry's sworn statement on "dower": "At all times during the refinancing process, including at the closing, I understood that I would need to execute the new mortgage for the purpose of releasing my dower interest." In addition, the Second Affidavit explains the origin of her understanding of dower: ". . . I was told by Paul Crawford [mortgage broker] that I needed to execute the new mortgage for the purpose of releasing dower only."

In the Second Affidavit Mrs. Perry further explains: "At closing, I did sign the mortgage with the sole intention that I was signing to release my dower interest. It was not my intention, nor my understanding, that I was signing the mortgage for purposes of securing the loan." On why she signed the earlier and conflicting First Affidavit, Mrs. Perry swears: "I had previously spoken to . . . [Defendant's Counsel], who contacted me to discuss this case, and I told . . . [Defendant's Counsel] that it was my understanding that I needed to sign the new mortgage only for the purpose of releasing my dower interest and not for the purpose of securing the loan." Finally, Mr. Perry's one and only affidavit is a twin in all respects, and is only memorable for the lack of a prior contradiction.

At the trial, the Court received deposition testimony from the Debtors given the expense of having them travel from Texas, where they now reside. In addition, Defendant provided two witnesses that appeared in person, and they were both involved in preparing the documents and closing the refinance. They do not have independent recollections of the closing, now nine years past. However, the testimony of one of those witnesses, Ms. Adrianne Marx (Ms. Marx), offers valuable insight on how the First Mortgage and other closing documents were prepared for the refinance.

Indeed, Ms. Marx prepared those documents on behalf of the lender from information she was provided. Specifically, she testified that the closing documents were generated by typing information into a database, that then populated and generated the form documents. In addition, Ms. Marx testified that she prepared an "Addendum to Closing Instructions" that required both Debtors at the closing to sign the First Mortgage for the refinance, and the related Truth in Lending Disclosure and Right to Cancel. Further, the Funding Checklist prepared by Ms. Marx shows that the title was checked to find additional owners not obligated to repay the loan, and that they signed, ". . . the required docs . . ."

To provide further guidance on how the Debtors purchased and financed real estate, the Court was presented evidence of three additional real estate transactions involving the Debtors. They appear to be investment properties that closed between September 2006 and February 2008, which approximates the time period of the refinance at issue.

— First, on September 20, 2006, solely Mr. Perry received a deed for 2349-2351 McGuffey Road, Columbus, Ohio (McGuffey-1). On September 19, 2007, a mortgage with Washington Mutual Bank, FA (WMB) was executed. On this Mortgage only Mr. Perry was listed as a "Borrower," and was described as "Vodrick Lee Perry, Married". The Mortgage, however, bears the initials of both Mr. and Mrs. Perry on the first thirteen pages, and on Page Fourteen the signatures and typewritten names of both Mr. and Mrs. Perry appear as "Borrower."

In addition, a two page "Fixed/Adjustable Rate Rider" from WMB dated September 19, 2007 is attached to the McGuffey-1 Mortgage. The first page bears the initials of both Mr. and Mrs. Perry, and the last page bears the signatures and typewritten names of both Mr. and Mrs. Perry as "Borrower." The transaction also included a five-page "Family Rider (Assignment of Rents)." The first three pages bear the initials of both Mr. and Mrs. Perry, the fourth page contains both Mr. and Mrs. Perry's signatures and typewritten names as "Borrower." The fifth page included the legal description, and included the initials of both Debtors.

— Second, on March 29, 2007, solely Mr. Perry received a deed for 2343-2345 McGuffey Road, Columbus, Ohio (McGuffey-2). That same day a mortgage with Mortgage Electronic Registration Systems, Inc. (MERS) was executed. It states at the top, " 'Borrower' is Vodrick Lee Perry and Marcy Perry, Husband and Wife". The first thirteen pages bear the initials of both Mr. and Mrs. Perry, and Page Fourteen bears both of their signatures and typewritten names as "Borrower." Page Fifteen is the notary's acknowledgement that both Debtors as "husband and wife" appeared at the closing. The McGuffey-2 transaction also included a "Family Rider (Assignment of Rents)" dated March 29, 2007. The first two pages bear the initials of both Debtors, and the last page includes both of their signatures and typewritten names as "Borrower."

— Third and finally, on February 19, 2008, a deed for 6367 Brauning Drive, Reynoldsburg, Ohio (Brauning Drive) was issued to solely "Vodrick Lee Perry, a grantee, a mar-ried man, whose spouse's name is Marcy Lynn Perry". On February 28, 2008, a mortgage with MERS was executed, and states " 'Borrower' is Vodrick Lee Perry, a married man." The first thirteen pages of the Brauning Drive Mortgage bear the initials of both Debtors, and Page Fourteen contains Mr. Perry's signature and typewritten name as "Borrower," and for Mrs. Perry it bears her signature and handwritten name as "Borrower." Page Fifteen is the notary acknowledgment, and states "Vodrick Lee Perry, a married man" appeared. However, at the bottom of this same page the initials of both Debtors appear. The Brauning Drive transaction also included a "Family Rider (Assignment of Rents)." The first two pages bear the initials of both Debtors, and on the last page it includes Mr. Perry's signature and typewritten name as "Borrower" and the signature and handwritten name of Mrs. Perry as "Borrower."

These three transactions provide valuable insight into how the Debtors acquired and financed real estate. Unlike the refinance of the Property presently at issue, only Mr. Perry was on the deeds of these investment properties. At best, we have a mere reference on the Brauning Drive deed that Mr. Perry is married to Mrs. Perry. For two of the investment properties, only Mr. Perry was listed as a "Borrower," followed by a reference to his marital status (Brauning Dr. and McGuffey-1). Yet, for all three investment properties, both Debtors initialed the mortgages and signed them as "Borrower." Finally, the closings for the investment properties included adjustable rate riders and assignments of rents that were initialed and signed by both Debtors, as "Borrower."

These events suggest, that without regard to who was on the deed or who was listed as the "Borrower," the Debtors acted together to sign mortgages and related documents for investment properties. This fact is consistent with the refinanced First Mortgage for the Property currently under discussion. It too bears both Debtors initials and their signatures as "Borrower," even though only Mr. Perry is listed on Page One as "Borrower." Indeed, the notary's acknowledgement for the refinance of the Property recognizes the presence of both Debtors, as "husband and wife." Finally, the closing documents for the investment properties bear no indication that Mrs. Perry was "signing to release dower." This same fact holds true for the closing of the refinance of the Property.

Considering all these facts, Plaintiff is left with the thin reed of an argument that only Mr. Perry signed and initialed the accompanying Promissory Note, as "Borrower." However, this means nothing more than that Mrs. Perry never promised to pay, and is not personally obligated to do so. However, under Ohio law the lack of her signature on the Note in no manner prevented Mrs. Perry from subjecting her one-half interest to the First Mortgage, as security for her husband's obligation. Rhiel v. Chase Home Fin. LLC (In re Colbert), 434 B.R. 844, 847 (Bankr.S.D.Oh.2010). Indeed, Paragraph 13 of the First Mortgage expressly encumbers Mrs. Perry's interest stating that: ". . . any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent."

After sorting through reams of documents and listening to lengthy testimony, nine years later it is the task of the Court to find what occurred, along with drawing conclusions as to the intention of the parties. Our North Star is the First Mortgage as a contract, including associated documents. Under Ohio law, "[a] contract is ambiguous if its provisions are susceptible to two or more reasonable interpretations. . . [w]hether a contract's terms are clear or ambiguous is a question of law for the court. *Drone Consultants, L.L.C. v. Armstrong*, 2016 WL 3057969 at *3 (Ohio App. 12th Dist. May 31, 2016). If a contract has a definite legal meaning, it is unambiguous; if a court cannot ascertain a definite legal meaning, it may consider extrinsic evidence to determine the parties' intent. *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 219, 797 N.E.2d 1256 (Ohio 2003). "It is generally the role of the fact finder to resolve ambiguity." *Id.* at 220, 797 N.E.2d 1256. These rules apply to mortgages, the same as any other contract. *Fannie Mae v. Winding*, 10 N.E.3d 799, 808 (Ohio 12th Dist.2014).

In denying both Plaintiff's and Defendant's summary judgment motions, the Court previously concluded that the First Mortgage at issue is ambiguous, and the Court had to consider extrinsic evidence to glean the intent of the parties. On one hand, Mrs. Perry initialed every page of the First Mortgage and signed on the line defining her as a "Borrower" along with Mr. Perry. On the other, only Mr. Perry was listed as a "Borrower" under Paragraph B of the First Mortgage.

From the evidence discussed above, the Court finds and concludes that during the refinance process Debtors intended to mortgage both of their half in-

terests in the Property. The following eight factors persuaded the Court. First, both Debtors purchased the Property together in 2005, and both were on the deed and original mortgage. According to Mr. Perry's testimony, they refinanced to obtain a fixed interest rate so as to avoid a looming variable rate adjustment, and in order to pay off a second mortgage. None of the 2007 closing documents bear an indication that the security for the refinance was a mere a one-half interest in the Property. *See Sawyer v. U.S.*, 76 F.Supp.3d 353, 359–60 (D.Mass.2015) (various sections of the mortgage in *Sawyer* case expressly indicated that it covered only a one-half interest).

Second, Plaintiff leans on the fact that only Mr. Perry was defined as "Borrower" on Page One of the refinanced First Mortgage. However, this Court does not agree that this single word is dispositive, as held in *Hardesty v. The Huntington National Bank, et al. (In re Payne)* 450 B.R. 711, 719–20 (Bankr.S.D.Oh.2011) (where parties adopt a word as a defined term, it must have the same legal significance throughout the document). That position transports us back to a time long ago, when closing documents were manually prepared with great care for each transaction by the lender that made, and continued to hold and service that loan. Instead, the word "Borrower" is nothing more than a term of art, and a shorthand, for use in other parts of a form document. The form is in turn populated by information fed into a database. *See Berg v. eHome Credit Corp.*, 848 F.Supp.2d 841, 846 (N.D.Ill.2012) (word "Borrower" defined as a shorthand for use in other portions of the mortgage).

Third, Ms. Marx testified that the closing agent was issued instructions to obtain the signatures of both Debtors on the refinanced First Mortgage, and the related Truth in Lending and Right to Cancel disclosure and notice. Further, the Funding Checklist prepared by Ms. Marx shows that the title was checked to find additional owners not obligated to repay the loan, and that they signed, "...the required docs..." *See SFJV 2005, L.L.C. v. Ream*, 933 N.E. 2d 819, 826 (2nd Dist.Oh.Ct.App. 2010) (Mr. and Mrs. Ream were both on the deed, but Mr. Ream was not on the note. Since he was on the deed, the title company decided that his signing "to release dower" was unnecessary, and rather to protect the lender, Mr. Ream was required to sign the mortgage to encumber his one-half interest. This fact was confirmed by the lender in the *Ream* case, as well as expressing that typically in the mortgage industry, only the person on the note would be listed as a "Borrower" on the first page of the mortgage).

Fourth, as detailed above, Page Three of the First Mortgage under the heading "Transfer of Rights in the Property," expressly provides that the legal description of the Property on Page Seventeen is the security. Fifth, Paragraph Thirteen of the First Mortgage, quoted above, expressly subjects Mrs. Perry's one-half interest to Defendant's lien as a "co-signer," which is a term of art and shorthand defined in Paragraph Thirteen. This Court is in agreement with reasoning of the Second District Ohio Appellate that found similar "co-signer" mortgage language binding upon both co-owners, under circumstances similar to those in our case. *Ream*, at 723. The contrary position expressed in a bankruptcy court decision, discussed above, focuses solely on the definition of "Borrower" on the first page, to the exclusion of all other terms, and is not persuasive to this Court for reasons detailed earlier. *In re Payne*, at 719–20.

Sixth, the Court could not glean from any of the closing documents that, as put by Plaintiff, Mrs. Perry signed the First

Mortgage merely "to release dower". Indeed, there is no requirement under Ohio law that mortgages contain an express reference to dower, and spouses that are not obligated on the promissory note but sign the mortgage, encumber any interest they have at the time, dower, or otherwise. *Nelson v. Countrywide Home Loans, Inc. (In re Barger)*, 490 B.R. 744, 753–759 (Bankr.S.D.Oh.2012). Even the relevance of "dower" to this case is unclear, since both Debtors are on the deed, and have been so since the purchase of the Property in 2005. A one-third life-estate interest in the Property(dower), pales in comparison to the one-half fee interest actually held by Mrs. Perry.

Seventh and as discussed above, the credibility of Mrs. Perry's testimony is significantly diminished by her conflicting affidavits. Between October and December 2015, Mrs. Perry swore that she intended to mortgage her interest in the Property, with absolutely no mention of "dower," and then swore that she did not intend to mortgage her interest-along with a dollop of "dower." Further, Mrs. Perry's fusion and confusion of the terms "dower" and "dowry" demonstrates that she had such a limited understanding of the terminology, that she was wholly incapable of forming the intent to sign merely "to release dower." Mercifully, Mr. Perry only signed one affidavit. It parrots Mrs. Perry's December affidavit, including the dower reference. However, at best it is cumulative.

Eight, there were three instances presented to the Court where Mr. Perry bought income properties in his name only. For two of the income property mortgages (McGuffey-1 and Brauning Drive), only Mr. Perry was defined as "Borrower," the third defined both Debtors as "Borrower" (McGuffey-2). However, in all three transactions, both Debtors initialed all the pages of the mortgages, and they both signed all the mortgages as "Borrower." In addition, the Adjustable Rate Riders and Assignment of Rents were initialed and signed by both Debtors.

From these eight factors a pattern emerges. Specifically, the Debtors signed mortgages without regard to who is defined as "Borrower", and who is actually on the deed. Without regard to what information was placed in the forms, and how they were executed by the Debtors, they acted as one indivisible financial unit to advance their combined real estate interests, as a family. As such, the Debtors held interests in five business entities, four investment properties, and held two jobs outside the home to support themselves. Combined, the Debtors scheduled total assets of $626,829.86 and total debts of $1,018,207.65. Simply put, it is implausible to suggest that at the time of the refinance, Debtors planned to obtain and Defendant consented, to grant a loan in exchange for a one-half interest in the Property. This may be the Debtors' wish now, but such relief is far afield from the scope of this Court's limited jurisdiction.

For all these reasons the Court finds and concludes that Mrs. Perry intended to grant Defendant a mortgage in her one-half interest, and that as a result, Defendant's First Mortgage encumbers both Debtors' interest in the Property. On these bases, the Court **GRANTS** judgment in favor of the Defendant and against the Plaintiff.

**IT IS SO ORDERED.**